ANTHONY KELLY *et al. vs.* MINNEAPOLIS CITY *et al.*

Submitted on briefs May 4, 1894.    Affirmed May 15, 1894.

No. 8829.

**Damages for change of grade of a street.**

Where the city council of the city of Minneapolis changed the grade of a street (laid out before the railroad right of way was acquired) so that the street should cross over the railroad tracks on a bridge with approaches instead of crossing such tracks on a grade crossing, *held,* that in such case the charters of the St. P., M. & M. Ry. Co. and the M. & St. L. Ry. Co. do not impose on such companies the obligation of paying the damages to the owners of permanent buildings abutting on such approaches, caused by such change of grade, but that the statute creating liability for such damages imposes it on the property benefited by such change of grade.

**A contract construed.**

A certain contract of settlement between said city and said railroad companies construed, and *held,* that while the city, as between it and the railroad companies, assumed the liability for such damages, this did not relieve the property benefited from liability for the same.

**Minneapolis city charter construed.**

*Held,* the provisions of the city charter, giving the city council a right, after all claims for such damages are filed, to reconsider the vote by which it ordered the street grade to be changed, is a privilege to be .exercised by the city council, and the owners of the property to be

taxed to pay such damages cannot, at least under the circumstances of this case, complain that the city council has put it out of its power to reconsider such vote before the time when it might do so arrives.

**Subject of an act expressed in its title.**

*Held,* Sp. Laws 1885, ch. 5, creating liability for such damages, and providing for a special tax or assessment on property benefited to pay the same, is not unconstitutional because the subject thereof is not properly expressed in its title.

**Constitutional law.**

*Held,* the provisions of such act providing for such special assessment on the property benefited are not unconstitutional because they do not give the owners of such property a right to be heard as to who shall be appointed assessors, or a right to appeal from such appointment.

**Injunction to restrain special assessment proceedings.**

*Held,* such property owners cannot restrain by injunction the proceedings to assess such special tax for benefits, on the ground of irregularities in the assessment proceedings, and that the right given by statute to defend in the proceedings to obtain the tax-judgment, and the right to review such tax judgment in this court, give such owners an adequate remedy.

Appeal by plaintiffs, Anthony Kelly, Joel B. Bassett, John C. Reno, William H. Holt and Martin Buerfening, from an order of the District Court of Hennepin County, *Charles B. Elliott,* J., made March 17, 1894, denying their motion for a new trial.

Action to restrain the defendants, the City of Minneapolis and Charles F. Haney, City Clerk, from proceeding with an assessment upon plaintiffs' property to pay damages awarded to certain other parties for change in the grade of Fifth street north in that city. After trial the court made findings and ordered judgment for defendants. Plaintiffs moved for a new trial. Being denied they appeal.

*Kitchel, Cohen & Shaw,* for appellants.

*David F. Simpson* and *L. A. Dunn,* for respondents.

CANTY, J. This is an appeal from an order denying plaintiffs' motion for a new trial in an action brought to enjoin the city of Minneapolis from assessing and collecting a special assessment of taxes on the property of the plaintiffs for benefits to their property in changing the grade of Fifth street north in said city, where it approaches and crosses over the tracks of the Great Northern Rail-

way Company (formerly St. Paul, Minneapolis & Manitoba Railway Company) and the Minneapolis & St. Louis Railway Company. This street was laid out as a public street before these railway companies acquired their rights of way. Their charters each provide, in substance, that the railway company shall have the right to construct its tracks across any such street, but that it shall restore the street to such condition and state of repair as not to impair or interfere with its free and proper use. This and other parallel streets crossed these tracks formerly on grade, and the city instituted mandamus proceedings to compel these companies to lower their tracks, and carry these streets over them. The construction of these charter provisions and the history of these proceedings may be found in the cases of *State ex rel.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. 3;) Id., 38 Minn. 246, (36 N. W. 870;) and *State ex rel.* v. *Minneapolis & St. L. Ry. Co.*, 39 Minn. 219, (39 N. W. 153.) But after the last of these cases was decided, and while it was pending in the United States Supreme Court on writ of error, it was stipulated by all the parties to it that such writ should be dismissed, and the final judgment in the District Court in that proceeding should be modified so that the tracks should be lowered less, and the grade of the street at the crossings and approaches accordingly raised more, and the approaches made consequently longer. The city further stipulated that it "assumes all liabilities for damages to the property of adjoining owners under the provisions of its charter, by reason of the change of the grade" in the streets "made necessary by the building of the approaches to the bridges on said streets, the same as though the said city were itself doing the actual work of constructing said approaches in accordance with said change of grade." The final judgment was modified pursuant to this stipulation, and the railroad companies proceeded accordingly, lowered their tracks, and built the bridges over them, and the approaches to these bridges at each end of the same. These approaches on Fifth street were partly filled in prior to September 1, 1891, when the city council voted to change the grade of Fifth street to the grade stipulated, and the approaches were afterwards completed by the railroad companies to conform to this grade. By an amendment, Sp. Laws 1885, ch. 5, to the city charter it is provided that when any permanent building has been constructed,

abutting on 'any street, after the grade has been once established, and the city council afterwards votes to change such grade, the owner of such building may, within twenty days thereafter, file objections stating his claim for damages; that unless the city council, within a certain time thereafter, reconsiders its vote, it shall appoint five freeholders to ascertain the amount of damages to such buildings, caused by reason of such change of grade, and award compensation therefor, and also assess the amount of such compensation upon the property to be benefited by such change of grade, and report all of the same to the city council, who may confirm the same, or refer it back to the same or another commission.

Such claims were filed for the change in grade of Fifth street, and such a commission was appointed. They assessed the damages to the permanent buildings thus damaged in the sum of $20,000 in the aggregate, and awarded that amount as compensation to the owners of such buildings, and assessed or levied the amount so awarded against the lands and premises of these plaintiffs and others as benefits which they would receive by such change in grade, and hence this suit.

1. On the authority of *State ex rel.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, (28 N. W. 3,) appellants claim that the obligation to pay these damages rested on the railway companies. That case does not so hold. It holds that it was their duty to restore the crossing, and where, to accomplish this, it was necessary to build approaches, it was their duty to build them; and if, in the prosecution of the work, it became necessary to encroach upon private property, that they had the power of eminent domain, and should, at their own expense, acquire the rights necessary in order to restore the crossing.

Neither are the cases of *Robinson* v. *Great Northern Ry. Co.*, 48 Minn. 445, (51 N. W. 384,) and *Parker* v. *Truesdale*, 54 Minn. 241, (55 N. W. 901,) decisive of the question of the liability of the property benefited to pay the damages here awarded, as claimed by respondent, and held by the court below. In those cases the owners of property abutting on the approaches brought suit against the railroad companies for damages resulting from the change of grade. As to those cases, it is only necessary to suggest that the right to damages for a change of the grade of a street is purely a creature

of statute, and the mode of procedure provided by the statute for the recovery of the damages is exclusive. The railroad company, in doing the work of making the change of grade, was acting for the city, and under its authority and rights. Then it necessarily follows that, if such abutting owner could not maintain a suit against the city for damages, he could not against the railroad company. He could only follow the exclusive remedy given him by the statute. But these plaintiffs are not in that position. They do not stand upon the statute for their rights, while repudiating it for their remedy; they do not stand upon or claim under this statute at all.

We are of the opinion that the railroad companies were not primarily liable for the damages to abutting owners resulting from the change of grade of the street. The right to such damages is one that did not exist when the railroad charters were granted. Then the obligation to pay such damages was not a charter obligation. Whether or not the legislature could, since it granted the charters, and the companies accepted and acted upon them, have imposed this obligation on the companies, it is not necessary to consider. It is sufficient to say that the legislature has not imposed it on the companies, but on the property benefited.

It is true that the court and the city, if they had both so decided, could have compelled the companies to lower their tracks so low as to run under the street without any change of the street grade. But the object to be attained was not the preservation of the then existing street grade, or the exemption of these plaintiffs from liability for these statutory damages, but the restoration of the street, not to as good a condition as if the railroads did not run there, but to such a condition as was reasonable and proper, under all the circumstances,—to such a condition as not "to interfere with its free and proper use." The city and the court decided what this reasonable and proper condition was to which the street should be restored. It is immaterial whether one or the other, or both, ultimately so decided. As far as these plaintiffs are concerned, they are conclusively bound by the result, and cannot be heard to say that there was no public necessity for the change of grade. If an incident of that result is to throw these statutory damages upon them, that is their misfortune.

2. It is also claimed that the city assumed the liability for these damages in its contract of settlement with the railroad companies, and that, therefore, it has become a liability of the city at large, and the damages should be paid out of the general funds. If the railroad companies were never liable for these damages, the contract of the city can hardly be construed as anything more than a contract to save the companies harmless. The city is the agent of, and represents, its wards, districts, and inhabitants in such public matters, and a contract by it, assuming their obligations, cannot be construed as a contract assuming the obligations of third parties, which, as between them and the city, relieves them from liability.

3. It is further claimed by appellants that this special assessment upon their property is void because the city council had put itself in a position where it had no opportunity to reconsider its vote when the time to file claims for damages had expired. The charter provides that the council may at that time reconsider its vote if, from the amount of damages claimed, it deems it unwise to make the change of grade. This right to rescind the proceedings is in the nature of a privilege to be exercised by the city council. The statute does not say that the work of grading shall not be commenced before the time to rescind expires, and it is in the discretion of the council how far it will proceed before the time to reconsider arrives. Whether or not the change is apparently unwise, and the damages likely to be so great and oppressive to those assessed to pay them as to make it an abuse of discretion for the council to proceed until the claims for damages have all been filed, and as to whether or not, in such a case, the court would grant relief, and as to whether or not the application should be made promptly before expense is incurred in carrying out the work, are all questions which it is not necessary here to consider. Neither the agreement with the railroad companies nor the prosecution of the work before the time to reconsider arrived destroys the validity of the assessment proceedings.

4. The charter of Minneapolis, ch. 8, § 9, provides that bridges crossing railroad tracks and the approaches thereto, when not chargeable to the railway companies, shall be built and maintained by the city as a general city charge. The appellants cite this as showing that these damages are a general city charge. Other parts of this section provide that the grading of streets shall, except as above provided, be a

ward charge.　The section applies merely to the grading of streets. and the keeping of them in repair, and not to the establishing of grades, or the changing of grades once established, or the payment of damages therefor, which is all provided for by Sp. Laws 1885, ch. 5, amending section 2 of this chapter 8.

5. Appellants claim that said chapter 5, Sp. Laws 1885, is unconstitutional because the subject of the act is not expressed in the title.　The title to the act is "An act amending section 2 of chapter 8 of the charter of the city of Minneapolis."　The title is sufficient. *State ex rel.* v. *Madson*, 43 Minn. 438, (45 N. W. 856;) *Willis* v. *Mabon*, 48 Minn. 140, (50 N. W. 1110.)

6. Appellants claim that the statute authorizing these assessments is unconstitutional, because the parties whose property is assessed have no opportunity to be heard as to who shall be appointed on the assessing commission, and no appeal is allowed in which a new commission may be appointed by the court after hearing.　It is well settled that, as against the state, property owners have no such constitutional rights, whether the assessment is of some regular tax for general purposes upon the regular tax districts, or of some special tax for a special purpose upon the district specially benefited. *Hennepin Co.* v. *Bartleson*, 37 Minn. 343, (34 N. W. 222;) *Carpenter* v. *City of St. Paul*, 23 Minn. 232; *State ex rel.* v. *District Court of Ramsey Co.*, 33 Minn. 295, (23 N. W. 222;) *Rogers* v. *City of St. Paul*, 22 Minn. 494.

7. Appellants further claim that the tax districts designated by the commissioners are too small; that a large area of the city was benefited by, and should be assessed for, these improvements; that the boundaries of the district are arbitrarily fixed; and that property within the district has been omitted which should be assessed.　It may be well to remark that the size and shape of the tax districts. might properly have been influenced, to some extent, by the fact that similar improvements were at the same time being made on Third and Fourth streets, and were by the mandamus proceedings provided for on Seventh street, all of which, as well as the improvements on this street, will connect North Minneapolis with the southern part of the city.

But injunction will not lie to restrain tax proceedings when there is an adequate remedy provided by the statute.　It has been held.

that *certiorari* will not lie to the board making such an assessment to review such errors; that the only remedies for reviewing the acts of the assessing board are the right given to defend in the proceedings to obtain the tax judgment, and the remedies allowed for reviewing that tax judgment in this court. *State ex rel.* v. *Board of Public Works,* 27 Minn. 442, (8 N. W. 161.)

If the assessment proceedings cannot, prior to the final determination and entry of the tax judgment, be reviewed for such errors by the direct proceeding of *certiorari,* how can such proceedings for such errors be attacked collaterally by injunction? The other assignments of error have no merit.

This disposes of the case, and the order of the court below should be affirmed. So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 304.)