STATE, RESPONDENT, v. LUTEY BROS., APPELLANT.

(No. 4,331.)

(Submitted January 8, 1919. Decided March 8, 1919.)

[179 Pac. 457.]

*Licenses—Trading Stamps—Penal Statutes—Construction.*

Trading Stamp Act—Stamps Redeemable in Cash—Not Included in Act.
   1. *Held,* that Chapter 17, Laws of 1917, regulating the giving of stamps, coupons, *etc.,* by merchants with articles of merchandise sold by them, and providing a penalty for a violation of the Act, does not prohibit the use of trading stamps which are redeemable in cash only.

Penal Statutes—Strict Construction.
   2. A penal statute cannot be extended by implication beyond the legitimate import of the words used therein, so as to embrace cases or acts not clearly described by them.

   [Constitutionality of statute prohibiting "trading stamps," see notes in Ann. Cas. 1915A, 375; Ann. Cas. 1916A, 212.]

*Appeal from District Court, Silver Bow County; John V. Dwyer, Judge.*

PROSECUTION by the State against Lutey Bros., a corporation, for a misdemeanor committed in the violation of the Trading Stamp Act. From a judgment of conviction, defendant appeals. Reversed.

*Messrs. Galen, Mettler & Toomey* and *Messrs. Walker & Walker,* for Appellant, submitted a brief; *Mr. Frank W.*

*Mettler, Mr. Thomas J. Walker* and *Mr. Frank J. Wolcott,* of the Bar of New York, of Counsel, argued the cause orally.

If the facts as shown by the agreed statement do not bring the transaction in question within the wording of this statute as written, then the conviction of appellant must be reversed. It must be within the letter of the law, and the law must be strictly construed, since it is penal in its nature. The rule that that is included which is within the spirit as well as the letter of the law has no application to the statute under consideration. (*United States* v. *Wiltberger,* 5 Wheat. (U. S.) 76, 5 L. Ed. 37.) Giving the law that strict construction which its penal character demands, and construing it as a whole, it seems clear that it requires a license only in connection with what is commonly known as premium advertising, in which the gifts or bonuses are in the form of merchandise, and does not refer to transactions such as shown by the agreed statement of facts in this case.

The right of companies to furnish, and of tens of thousands of merchants now using, to continue to use, this co-operative discount system, as well as the rights of tens of millions of the consuming public to receive a discount on their small as well as large cash purchases afforded them through the medium of trading stamps, redeemable in cash or merchandise of their selection at their option, have been expressly upheld by the courts of last resort of many states, which courts, after setting forth in detail the facts relative to the furnishing and use of such a system, have held the same beneficial to all concerned and lawful, and Acts intended to hamper or prohibit such use violative of the natural rights of all parties concerned, which are guaranteed and protected by the provisions of their respective state Constitutions, among others the following: *Ex parte Drexel,* 147 Cal. 763, 3 Ann. Cas. 878, 2 L. R. A. (n. s.) 588, 82 Pac. 429; *Winston* v. *Beeson,* 135 N. C. 271, 65 L. R. A. 167, 47 S. E. 457; *In re Opinion of the Justices,* 226 Mass. 613, 115 N. E. 978; *State* v. *Caspare,* 115 Md. 7, 80 Atl. 606; *State* v. *Sperry & Hutchinson Co.,* 110 Minn. 378, 126 N. W. 120; *Young*

v. *Commonwealth,* 101 Va. 853, 45 S. E. 327; *State* v. *Ramseyer,*
73 N. H. 31, 6 Ann. Cas. 445, 58 Atl. 958; *Denver* v. *Frueauff,*
39 Colo. 20, 12 Ann. Cas. 521, 7 L. R. A. (n. s.) 1131, 88 Pac.
389; *State* v. *Sperry & Hutchinson Co.,* 94 Neb. 785, 49 L. R. A.
(n. s.) 1123, 144 N. W. 795; *State* v. *Dalton,* 22 R. I. 77, 84 Am.
St. Rep. 818, 48 L. R. A. 775, 46 Atl. 234; *State* v. *Shugart,*
138 Ala. 86, 100 Am. St. Rep. 17, 35 South. 28; *Montgomery*
v. *Kelly,* 142 Ala. 552, 110 Am. St. Rep. 43, 70 L. R. A. 209,
38 South. 67; *People* v. *Zimmerman,* 102 App. Div. 103, 92
N. Y. Supp. 497. To these decisions might be added the deci-
sions of many inferior state courts, as well as the decisions of
many federal courts, having this discount system under con-
sideration. We will cite and quote from only two of them,
however. In *Ex parte Hutchinson,* 137 Fed. 949, the district
judge in the course of his opinion says: "The giving of trading
stamps is merely one way of discounting bills in consideration
for immediate payment in cash, which is a common practice of
merchants, and is doubtless a popular method, and advan-
tageous to all concerned, and it is not obnoxious to public
policy." In *Sperry & H. Co.* v. *Temple,* 137 Fed. 992, the
United States circuit court, district of Massachusetts, says:
"The trading stamp business is essentially legitimate, and, so
far as the court can discover, it is the only way in which the
small purchaser practically obtains a discount for immediate
payment."

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assist-
ant Attorney General, *Mr. Joseph R. Jackson, Mr. A. C. Mc-
Daniel, Mr. Frank L. Riley* and *Mr. N. A. Rotering,* for Re-
spondent, submitted a brief; *Mr. Jackson* and *Mr. Rotering*
argued the cause orally.

According to the agreed statement of facts, the appellant
herein did use and furnish as a gift and bonus to its customers
the Sperry & Hutchinson green trading stamps with and for
the sale of goods, wares and merchandise. The said stamps
entitled the said purchaser receiving the same with his mer-

chandise to procure from The Sperry & Hutchinson Company the sum of one mill for every ten cents paid to the appellant for the said merchandise, as something free and above the article purchased by the buyer. The article given, to-wit, the stamp, is of value, and, being of value, even though the redemption of it is in actual cash, nevertheless, comes within the term of "bonus" or "premium," since under the act governing the use of the trading stamps the words "gift, premium or bonus" are given the widest and most general scope.

A reading of the statute discloses that the stamps, coupons, *etc.,* are not to be used as "a gift or bonus or otherwise," showing thereby that a stamp given by the merchant with merchandise to be rebated by a third person is one of the things that cannot be used, unless the merchant has obtained a license and has paid for such license to the proper authorities the stipulated sum as fixed by law. (*State ex rel. Sperry & Hutchinson Co.* v. *Weigle,* 166 Wis. 613, 166 N. W. 54, 57.) The stamp need not be one which shall entitle the purchaser receiving the same to procure a premium or bonus in the form of goods, wares or merchandise, for the statute speaks of "any premium or bonus." The statute thus enlarges the scope or meaning ordinarily given to the word "premium" and to the word "bonus," by making it include goods, ware and merchandise. The words "free of charge for less than the retail market price thereof" clearly have reference to the words "goods, wares or merchandise," as indicated by the absence of any punctuation in the phrase.

Construing the law as strictly as the statute is capable of construction, respondent contends that the use of the stamps in this case is certainly within the terms of "gift" or "bonus"; and even should it be contended that this position of respondent is not correct, then do we insist that the intent of the legislature surely brings the use and furnishing of the said stamps within the purview of the word "otherwise," as used in Chapter 17.

There is nothing in the statute that would exclude "cash" from the definition of "bonus" or "premium." Everything that is without charge is included. There is no express or implied intention of the legislature to restrict in any way the meaning of the words.

Similar legislation has been enacted in many of the states and there are many constructions by the courts upon this class of legislation. Many of the state courts persistently declared invalid similar Acts until the supreme court of the United States, in three opinions, held as unsound the reasons upon which these Acts were declared invalid. Since the decisions of the supreme court of the United States many of the state courts have changed their attitude, and courts, before which the question was a new one, proceeded to decide in conformity with the United States supreme court opinions. (See *Rast v. Van Deman & Lewis Co.*, 240 U. S. 342, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421, 60 L. Ed. 679, 36 Sup. Ct. Rep. 370; *Tanner* v. *Little*, 240 U. S. 369, 60 L. Ed. 691, 36 Sup. Ct. Rep. 379; *Pitney* v. *Washington*, 240 U. S. 387, 60 L. Ed. 703, 36 Sup. Ct. Rep. 385; *District of Columbia* v. *Kraft*, 35 App. Cas. (D. C.) 253, 30 L. R. A. (n. s.) 957, 962; *State* v. *Pitney*, 79 Wash. 608, Ann. Cas. 1916A, 209, 140 Pac. 918; *Sperry & Hutchinson Co.* v. *Melton*, 69 W. Va. 124, 34 L. R. A. (n. s.) 433, 71 S. E. 19; *State* v. *Underwood*, 139 La. 288, 71 South. 513; *State* v. *Wilson*, 101 Kan. 789, 168 Pac. 679; *State ex rel. Sperry & Hutchinson Co.* v. *Weigle*, 166 Wis. 613, 166 N. W. 54; *Sperry & Hutchinson Co.* v. *Blue*, 202 Fed. 82, 120 C. C. A. 854.)

MR. JUSTICE COOPER delivered the opinion of the court.

This is an appeal from a judgment of conviction in a criminal prosecution originally brought in a justice's court of Silver Bow County, for a violation of Chapter 17, Laws of 1917, commonly known as the Trading Stamp Law, the title and section 1 of which read as follows:

"An Act to regulate the giving or furnishing of Bonuses or Premiums, such as the giving or furnishing of Stamps, Coupons, Tickets, Certificates, Cards, Gifts or Premiums, such as Crockery, Chinaware, Aluminumware, Tinware or anything else that may be included with or contained in Packages of any kind of Merchandise, of any description, or other similar Device for, or with or in connection with the Sale of Goods, Wares or Merchandise, and providing a Penalty for the violation thereof.

"Section 1. Every person, firm or corporation who shall use, and every person, firm or corporation who shall furnish to any other person, firm or corporation to use, as a gift or bonus, or otherwise, in, with, or for the sale of any goods, wares or merchandise, any premium or bonus, including stamps, coupons, tickets, certificates, cards, or other similar devices which shall entitle the purchaser receiving the same with such sale of goods, wares or merchandise to procure from any person, firm or corporation, any premium or bonus, including goods, wares or merchandise free of charge or for less than the retail market price thereof upon the production of any number of said stamps, coupons, tickets, certificates, cards or other similar device; and every person, firm or corporation placing premiums or bonuses or goods, wares or merchandise, including such as crockery, chinaware, aluminumware, tinware, graniteware, or anything else that may be included (in) or contained or delivered with packages of any kind of merchandise of any description, shall, before so furnishing, selling or using the same, obtain a separate license therefor from the county treasurer of each county wherein such furnishing or selling or using of such premiums or bonuses shall take place, for each and every store or place of business in that county from which such furnishing or selling of premiums or bonuses as herein enumerated, or in which such shall take place."

Section 2 imposes an annual license fee of $6,000 for permission to do what section 1 prohibits merchants from doing without such license.

Section 4 declares that any person, firm or corporation violating any of the provisions of the Act, is guilty of a misdemeanor, punishable by fine or imprisonment in the county jail, or by both such fine and imprisonment.

The trial in the justice's court resulted in a verdict of guilty and the imposition of a fine. The defendant appealed to the district court where, after the overruling of a demurrer to the complaint upon the ground, among others, that the facts stated did not constitute a public offense, a trial *de novo* was had upon an agreed statement of facts. Conviction again followed. Defendant appeals from the judgment of conviction.

The complaint charges that the defendant "did willfully, [1] unlawfully, wrongfully and intentionally use, as a gift and bonus, in and with and for the sale of certain goods, wares and merchandise, * * * a premium, to-wit, stamps, commonly known as, called and designated Sperry-Hutchinson Trading Stamps, which stamps then and there entitled the purchaser receiving the same with such sale of goods, wares and merchandise to procure from the Sperry-Hutchinson Company,— * * * a premium and bonus free of charge, to-wit, the sum of one mill, lawful money of the United States of America, * * * without * * * having obtained a separate license therefor," *etc.*

The agreed statement shows substantially these facts: The defendant Lutey Bros. is a corporation doing a mercantile business in the city of Butte in nine different stores. The Sperry-Hutchinson Company, a New Jersey corporation engaged in furnishing to retail merchants "trading stamps" under a contract the preamble of which recites the scheme to be "a co-operative system of giving a cash discount on small as well as large cash purchases, for the purpose of encouraging cash trade," *etc.*, entered into a contract with Lutey Bros. to furnish to it the system and services relating thereto. The stamps were furnished to and used by the defendant, the method of their issue and use being briefly the following: The customer who made a purchase at any one of the Lutey stores, was, upon

payment in cash, furnished one trading stamp for each ten cents paid by him, which the purchaser in turn was required to paste in so-called stamp-books, each with a capacity for 1,000 stamps. These stamp-books, when filled with 1,000 of the trading stamps, representing purchases amounting in all to $100, the Sperry-Hutchinson Company redeemed at its place of business in Butte, for $2 in cash. On the back of each stamp appeared the following:

"Subject to the notice in our Green Stamp Books, this stamp will be redeemed by us in cash. It is our property and not transferable except as stated in such notice.

"THE SPERRY & HUTCHINSON Co."

On each of the stamp-books is found this legend: "Redeemable only in cash."

On the part of the respondent, we are asked to affirm the judgment assessing a fine of $25 against the defendant, and to require it to pay an annual license fee of $6,000 under the statute, before it can use trading stamps in its business as evidence of a cash discount. On the part of the appellant, we are regaled with a mountain of legal argument and judicial opinion, by which (as was remarked by the Chief Justice on the oral argument) "the court is blinded by the blaze of light," in which the constitutionality of the Act is assailed, upon the ground that it aims at the deprivation of that freedom of contract and choice of lawful occupation protected by constitutional guaranties.

The fundamental policy of the Act is to regulate the giving of premiums or bonuses. The language employed in section 1, however, is so worded and contains so many meaningless words and phrases that it all but defies analysis. Its title is open to even more severe criticism in that respect. From a consideration of both the title and the body of the Act, it may be said that the statute is aimed at three distinct classes and may be paraphrased somewhat as follows: 1. Every person, firm or corporation who shall use trading stamps which entitle the person receiving the same to exchange the stamps for goods,

wares and merchandise, must, before using such stamps, obtain a license, *etc.* 2. Every person, firm or corporation who shall furnish to another person, firm or corporation for use, the stamps mentioned above, must also first obtain the license. 3. Every person, firm or corporation placing in or delivering with a package of goods sold, any premium such as crockery, chinaware, aluminumware, *etc.*, must likewise first obtain the license. In other words, it seems to be aimed against the use of goods as a premium. It does not appear to deny to a merchant the right to sell goods for cash at a discount from the general market price, nor to prohibit the use of trading stamps redeemable only in cash. As thus construed, the statute has no application to the case presented by this record, and in the use of the stamps in question, defendant did not violate any of the laws of this state.

An offense is not punishable unless it falls within the condemnation of some penal statute. If it is not plainly and specifically within the Act, it is not against law, and no conviction can be had thereunder. Its provisions are not to be [2] extended by implication, and the act charged as an offense must be unmistakably within the letter as well as the spirit of the law. (*State* v. *Tuffs*, 54 Mont. 20, 26, 165 Pac. 1107.) "The rule is founded upon the principle that the power of punishment vests in the legislature, not in the courts." (*State* v. *Aetna Banking & Trust Co.*, 34 Mont. 379, 87 Pac. 268.) Penal statutes are not to be extended by implication beyond the legitimate import of the words used in them, so as to embrace cases or acts not clearly described by such words. (26 Am. & Eng. Ency. of Law, 657; *State* v. *Aetna Banking & Trust Co., supra.*)

Webster defines a premium to be, "A price for a loan, a sum in addition to interest; a bonus." Bonus: "An allowance in addition to what is usual, current or stipulated, as a bonus on stocks." See, also, The Century Dictionary and Cyclopedia, under the definitions of the words "bonus" and "premium." That the impositions of the Act are drastic and so highly penal

as to be exclusive—and intended to be so—is conceded. The question then is:

Does the furnishing of trading stamps, redeemable in cash, as shown in the case before us, constitute the giving of a premium or bonus as variously described therein? The transaction involves no element of chance, uncertainty or contingency. In fact, it amounts to a specific deduction for a cash purchase, regardless of amount—a percentage discount—a rebate, and does not therefore fall within the condemnation of the statute. "When the purchaser and the seller understand that the token, coupon or stamp issued with the sale of goods is of a stated cash value, the transaction thereby becomes purged of its objectionable features and influences which such legislation condemns." (*Trading Stamp Cases*, 166 Wis. 614, Ann. Cas. 1918D, 707, 166 N. W. 59.) We are fortified in this interpretation of the Act by the reasoning of the courts in numerous cases. (*Olson* v. *Ross* (N. D.), 167 N. W. 385; *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421, 60 L. Ed. 679, 36 Sup. Ct. Rep. 370; *Tanner* v. *Little*, 240 U. S. 369, 60 L. Ed. 691, 36 Sup. Ct. Rep. 379; *State* v. *Weigle* (Wis.), 168 N. W. 385; *Trading Stamp Cases*, *supra.*)

From the views expressed, it becomes apparent that the questions respecting the application of constitutional guaranties are merely hypothetical; and we decline to anticipate a proposition so momentous until a case is presented in which the precise facts are involved.

The complaint does not state a public offense and the court erred in overruling the general demurrer interposed by defendant. The judgment is reversed and the cause is remanded, with directions to the district court to dismiss the proceeding.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.