## DAN ROSSO AND OTHERS v. VILLAGE OF BROOKLYN CENTER AND OTHERS.[1]

February 26, 1943.

No. 33,385.

[1]Reported in 8 N. W. (2d) 219.

*Arthur LeSueur,* for appellants.

*Wells J. Wright,* for respondent Village of Brooklyn Center.

*Frank J. Williams,* County Attorney, and *Edward J. Shannon,* Special Assistant County Attorney, for respondents Al P. Erickson and Henry Voegeli.

THOMAS GALLAGHER, JUSTICE.

In 1939 the village of Brooklyn Center in Hennepin county entered into a contract to install storm drain tile on two state aid roads running through and used as public highways by the village. One road was known as county road No. 10 and the other as county road No. 130. Appellants herein are property owners and residents of the village of Brooklyn Center owning property adjoining said highways but on the side opposite to that of the storm drain tile installations.

The federal Works Progress Administration worked in conjunction with the village on the project. This factor is not involved in the questions here presented.

All the proceedings with reference to the work and the levy of the assessments therefor were taken under authority of Minn. St. 1941, §§ 429.01 to 429.18 (Mason St. 1927, §§ 1918-15 to 1918-32).

Section 429.01 (§ 1918-15) provides:

"Subdivision 6. In the word 'street' [as used herein] is included alleys, boulevards, parkways, and public roads of any sort within the limits of a municipality.

"Subdivision 7. In the term 'public improvement' or 'improvement' is included

\* \* \* \* \*

"(2) The construction or extension of sanitary or storm sewers.

\* \* \* \* \*

"Subdivision 9. The words 'construction or extension of sani-

tary or storm sewers' mean the construction of a sewer system of either class, including * * * trunk district and lateral sewers of any of the foregoing."

Section 429.02 (§ 1918-16) provides:

"A municipality may make any of these improvements and assess the cost thereof on the property abutting thereon, or on the property benefited thereby to the extent and in the manner provided in sections 429.03 to 429.18 [§§ 1918-17 to 1918-32]."

Section 429.11 (§ 1918-25) provides:

"On the confirmation of an assessment the clerk shall deliver a certified copy of the assessment roll to the municipality's treasurer. The treasurer shall thereupon cause a brief notice to be published for two weeks in the municipality's official newspaper, to the effect that he has received as of a day named in the notice, a copy of the assessment roll for the improvement named."

Section 429.16 (§ 1918-30) provides:

"Within 30 days after the publication of the treasurer's notice, provided for in § 429.11 [§ 1918-25], any person deeming himself aggrieved by an assessment may appeal to the district court of the county in which is located the assessed property in which he is interested, by serving upon the clerk of the municipality a notice of appeal which shall briefly state the grounds upon which the appeal is taken, and a bond of $250 in which the municipality shall be obligee, to be approved by the clerk, conditioned that the appellant will duly prosecute the appeal, pay all costs and disbursements which may be adjudged against him, and abide the order of the court. * * * The appeal shall be placed upon the calendar of the next general term commencing more than 30 days after the date of serving the notice and bond and shall be tried as are other appeals in such cases."

On October 17, 1938, and on November 12, 1938, the village council of Brooklyn Center adopted resolutions authorizing the making of said improvements and the spreading of special assess-

ments against the property owners abutting on said project and otherwise provided for the completion of the financing and the taking of bids on the project.

Special assessments for the improvement were placed against plaintiffs' lands. These were divided into five annual installments, the first of which, covering the year 1939, was payable in 1940. Subsequently the proceedings were certified to the auditor of Hennepin county and by him certified to the county treasurer for collection. All the plaintiffs have paid the 1939 installment of such assessments, and two of them have paid one-half of the 1940 installment, payable in 1941. They contend that their payments were made "under protest."

No legal proceedings of any kind were taken by anyone with reference to the proceedings or the assessments until 1942, when plaintiffs, "in their own behalf and on behalf of all other taxpayers of the Village of Brooklyn Center, Hennepin County, Minnesota, affected similarly," commenced an action in the district court of Hennepin county against the village and against the auditor and treasurer of Hennepin county to permanently enjoin such defendants and all their successors in office from collecting the unpaid assessments and for an order directing that such assessments be stricken from the records of the Hennepin county tax rolls.

Separate demurrers were sustained to the original complaint. Subsequently an amended complaint was filed, and separate demurrers thereto were likewise sustained on the ground that the complaint did not state a cause of action against the defendants, or any of them. From the order sustaining the demurrers to the amended complaint this appeal is taken.

An examination of the amended complaint indicates that plaintiffs based their cause of action on the following claims: (1) That all said special assessments are void and illegal; (2) that the village council had no jurisdiction or authority to levy said assessments against plaintiffs' property for the reason that no benefits had accrued or been conferred upon them; (3) that the village council had no jurisdiction or authority to levy special assessments

for a storm drain on road No. 130 or road No. 10, as they are both state aid highways and under the jurisdiction of the state commissioner of highways and the board of county commissioners of Hennepin county; and (4) that it was the duty of the village to pay all the expenses of the installation of said tile drain from the road funds of the village.

In a memorandum attached to the order sustaining the demurrers to the amended complaint the trial court made it clear that the demurrers were sustained on the theory that plaintiffs could not maintain a suit in equity to enjoin the collection of the assessments, because the law afforded them an adequate remedy to contest the assessments and the proceedings to collect them.

■ We must agree with the decision of the trial court. It has been held by this court on numerous occasions that a taxpayer may not maintain a suit in equity to enjoin the collection of a tax or an assessment when he has an adequate remedy at law available to contest the proceeding or the collection of the tax or the assessment. This principle is set forth in Wall v. Borgen, 152 Minn. 106, 108, 188 N. W. 159, 160, as follows:

"It has been consistently held that the property owner is given an adequate, speedy, simple and inexpensive remedy against any illegal or wrongful tax in the tax proceeding itself, and that he must seek his remedy in that proceeding and cannot maintain a suit in equity to enjoin the levying or collection of the tax. * * * An injunction will lie where the property owner has no other adequate remedy. * * * But we know of no case in which an injunction has been sustained where the tax could be enforced only in court and in the manner provided by our present general laws."

This doctrine has been held applicable to special assessments such as those involved in this case. Schultz v. City of North Mankato, 176 Minn. 76, 222 N. W. 518.

In the instant case there was available to plaintiffs a simple and direct remedy in the assessment proceedings, under Minn. St.

1941, § 429.16 (Mason St. 1927, § 1918-30), above cited, whereby they could have appealed directly to the district court and attacked the assessments or the proceedings in connection therewith.

In addition, they had the right to contest the tax under Minn. St. 1941, §§ 278.01 to 278.05 (Mason St. 1940 Supp. §§ 2126-1 to 2126-5), § 278.01 of which provides:

"Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed, or that such parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied by serving copies of a petition for such determination upon the county auditor, county treasurer, and the county attorney and filing the same, with proof of such service, in the office of the clerk of the district court on or before the first day of June of the year in which such tax becomes payable."

This section applies to special assessments as well as general taxes. See In re Petition of Slaughter, 213 Minn. 70, 5 N. W. (2d) 64.

It would appear, therefore, that plaintiffs had at least two adequate remedies at law available to them to contest these assessment proceedings and the collection of the assessments involved. Hence the trial court did not err in sustaining the demurrers to the amended complaint on the grounds above indicated.

■ It might also be suggested here that, in view of the fact that plaintiffs paid a portion of their assessments, they thereby waived any objection they might have had to the proceedings on jurisdictional grounds. The fact that the payments were made "under protest" is immaterial, unless there is evidence that such payments were made under duress or coercion. See In re Petition of Slaughter, *supra*.

The order appealed from is affirmed.