UNION INTERCHANGE, INC., a Corporation, Plaintiff and
Appellant, v. ROBERT J. ALLEN, BONNIE L. ALLEN,
LEWIS C. URBACH and BERNARDINE URBACH, Co-
Partners Doing Business as ISLAND RESORT MOTEL,
Defendants and Respondents.

No. 10336.
Submitted February 14, 1962. Decided April 6, 1962.
370 P.2d 492.

228

Ed C. Jones and Clarke B. Richie, Livingston (Clarke B. Richie, Livingston, argued orally), for appellant.

David B. Fitzgerald and Jack D. Shanstrom, Livingston (David B. Fitzgerald, Livingston, argued orally), for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an action to recover on a written contract wherein plaintiff seeks to recover the sum of $1,850 together with interest, attorneys' fees and costs.

On May 16, 1959, defendants are alleged to have entered into a contract in writing, by the terms of which the defendants agreed to pay to the plaintiff the sum of $1,850 for contacting buyers by advertising in certain of the plaintiff's publications. The representative of the plaintiff was apparently not a resident of Montana, neither did he maintain an office within the state. The agreement shows acceptance by the plaintiff at Seattle, Washington, on May 18, 1959, but the record does not reveal nor was it alleged that such acceptance was communicated to the defendants.

The bare essentials of the disputed contract provide that the plaintiff agrees to advertise the sales information on the business of the defendants which was the Island Resort Motel at

Livingston, Montana, and that the advertising would appear in the Union Interchange Brokers Bulletin. The agreement further provided that defendants would pay to the plaintiff $1,850 at Seattle, Washington, three months from the date of the acceptance of the advertising agreement, and further provided that if the defendants sold the Motel prior to the three-months period that the sum of $1,850 would immediately become due and payable and further provided that in the event of legal action for collection, defendants agreed to pay a reasonable attorney's fee and court costs and that venue of any such action would be in King County, Washington.

The fourth paragraph of Exhibit 3-B provides:

"You are privileged to sell your business or property yourself or through any broker you choose because the Union Interchange, Inc., is not, and does not act as a broker. We do not enter into any commission arrangements between you and brokers. We are engaged in the advertising for sale of businesses and properties. We cannot, of course, guarantee a sale. You may cancel this agreement at any time by written notice; however, *you are still under obligation to pay the charge specified on Page 1.*" Emphasis supplied.

The complaint in this case recites that the Union Interchange, Inc., is the plaintiff. Paragraph I states:

"That at all times herein mentioned, plaintiff was and now is a corporation duly organized and existing under law."

The complaint is silent as to where the plaintiff is incorporated or where its principal place of business is located.

There is no mention made of interstate commerce being involved nor is there any constitutional question presented by the express pleadings of the complaint, being simply a complaint charging the breach of the written contract and asking $1,850 and $450 attorney's fees. This complaint was filed on December 13, 1960, at Livingston, Park County, Montana.

On January 23, 1961, the defendants filed a general and special demurrer, reciting in paragraph I that the "complaint does not state facts sufficient to constitute a cause of action against said defendants."

In paragraph II of the demurrer, it is stated that "the plaintiff has not the legal capacity to sue" in that "plaintiff was and is acting in the capacity of real estate broker in the State of Montana as the same is defined by the provisions of section 66-1903, R.C.M., as amended by Chapter 129, Laws of Montana, 1957; that the alleged contract referred to in the complaint and which is the basis of this action was * * * made by the plaintiff acting in the capacity of such real estate broker; that the complaint of plaintiff seeks to recover compensation for its services alleged to have been earned as a real estate broker, defined in section 66-1903, as amended; that plaintiff has not alleged in its complaint that plaintiff was duly licensed as a real estate broker under the provisions of Chapter 19 of Title 66, §§ 66-1901 to 66-1923, R.C.M.1947, as amended."

On March 30, 1961, the Honorable George J. Allen, District Judge of the Sixth Judicial District in and for the County of Park, sustained the general and special demurrer of the defendants.

On June 20, 1961, the plaintiff having failed to amend its complaint, a judgment was made and entered, sustaining the demurrer of the defendants and assessing costs taxed against the plaintiff in the amount of $2.50.

On July 12, 1961, attorneys for the plaintiff filed their notice of appeal in this action.

The plaintiff cites three specifications of error, the first being that the court erred in holding that the plaintiff was a real estate broker within the definition as set forth in section 66-1903, R.C.M.1947, as amended.

The second specification of error is that the 1957 amendment to section 66-1903 was unconstitutional in that it was an unlawful restraint of interstate commerce.

The third specification of error was that the court erred in refusing to hold that the plaintiff's business was solely for the sale of advertising in its publications.

Plaintiff in oral argument abandoned the first specification of error if this court found the amended section 66-1903 constitutional. The same situation would prevail on the third specification of error.

For sake of clarification it might be appropriate at this juncture to recite the exact language of the 1957 amendment (Chapter 129) to section 66-1903.

"A 'real estate broker,' within the meaning of this act, is a person who for a compensation, or promise thereof, sells or offers for sale, buys or offers to buy, *lists or solicits for prospective purchasers, receives or demands an advance fee,* negotiates, or offers to negotiate, either directly or indirectly, whether as the employee of another or otherwise, the purchase, sale, exchange of real estate, or any interest therein, for others, as a whole or partial vocation. The word 'person' as used in this act, shall be construed to mean and include a corporation. *The term 'advance fee' as used in this act is a fee contracted for, claimed, demanded, charged, received or collected for a listing, advertisement or offer to sell or lease property in a publication issued primarily for the purpose of promoting the sale or lease of business opportunities or real estate or for referral to real estate brokers or salesmen, other than a newspaper of general circulation, prior to the printing thereof.* The provisions of this act shall not apply to any person who purchases property for his own use or account, nor to any person, who, being the owner of property, sells, exchanges, or otherwise disposes of the same for his own account, nor to any person holding a duly executed power of attorney written in a separate instrument designated as such, from the owner granting power to consumate the sale, exchange or leasing of real estate, nor to the services rendered by

an attorney at law for or on behalf of his client, nor to any receiver, trustee in bankruptcy, guardian, administrator, or executor, nor to any person acting under the order of the court, nor to any person selling under a deed of trust.''

Adverting to the second specification of error this exact situation is presented to this court.

Plaintiff pleads facts which show that it is required to be licensed under the above-quoted statute and fails to allege that it is so licensed. Defendants demur on this ground.

Plaintiff refuses to amend or further plead, and for the first time, on this appeal, plaintiff asserts that the statute is unconstitutional because of a fact situation not pleaded.

How is this court to speculate on those facts? Plaintiff asserts that the statute (section 66-1903) interferes with interstate commerce. In what way?

What business is plaintiff in, under what state or federal law? How is it under the protection of the interstate commerce clause?

To answer the foregoing questions we would of necessity be obliged to resort to speculation and conjecture or take plaintiff's statement on appeal as facts.

The pertinent point is that the pleading (complaint) does not allege sufficient facts to present any constitutional question to the court.

In State ex rel. Toomey, v. State Board of Examiners, 74 Mont. 1, 14, 238 P. 316, 322, this court observed: ''It is elemental that the pleader must allege all facts material to his cause of action directly, in ordinary and concise language, and with reasonable certainty. And, where a seasonable attack is made upon the complaint for want of substantive allegations, the court should indulge, as against the pleader, the presumption that he has stated his cause of action as strongly as he can.''

In State v. Lutey Bros., 55 Mont. 545, 554, 179 P. 457, 459, this court commented on a suggested constitutional question improperly raised in the following language: ''From the views

expressed, it becomes apparent that the questions respecting the application of constitutional guaranties are merely hypothetical; and we decline to anticipate a proposition so momentous until a case is presented in which the precise facts are involved."

In 11 Am.Jur., Constitutional Law, § 125, p. 772, the general rule is stated:

"A person whose rights are invaded by an act of the legislature or of an administrative board must raise the objection at the earliest available opportunity and exhaust the remedies which may have been provided for the correction of unreasonable and improper orders, before he will be permitted to make an attack in the courts on the constitutionality of the statute. The failure to raise an opportune objection to an order of the court amounting to an invasion of a constitutional right may amount to a waiver of this right."

In 16 C. J. S. Constitutional Law § 97, p. 347, the rule again is stated: "A court, however, will not anticipate prospective conditions which may never arise, in order to declare a law unconstitutional; and a statute is not to be upset on hypothetical and unreal possibilities if it is valid according to the facts as they exist."

A statute will be presumed constitutional unless the contrary is made to appear beyond a reasonable doubt, so said this court in State ex rel. Powell v. State Bank of Moore, 90 Mont. 539, 549, 4 P.2d 717, 80 A.L.R. 1494, citing State ex rel. Pierce v. Gowdy, 62 Mont. 119, 203 P. 1115; State ex rel. Bankers' Trust Co. v. Walker, 70 Mont. 484, 226 P. 894.

In the Moore case, supra, at 550 of 90 Mont., at 719 of 4 P.2d, this court said: "Where it is contended that an act invades constitutional rights, a person affected should raise the question of the invalidity of the act at the earliest opportunity,. and failing to do so may constitute a waiver of the right."

Conversely, there is no valid reason why a court, if it.

234

has jurisdiction of a constitutional question, should refuse to do so merely because of discretion. The constitutionality of a statute need not be pleaded with any greater certainty than other issues; the determination whether the issue is properly presented is to be made by construing the pleadings according to accepted methods.

Where, as here, there was no allegation of any kind reciting that the validity of the statute is directly and necessarily involved in the controversy as a matter of law, there can be no determination of plaintiff's contention.

In In re Clark's Estate, 105 Mont. 401, 410, 74 P.2d 401, 405, 114 A.L.R. 496, this court stated:

"Courts have adopted many rules, the observance of which enables them to refrain from passing upon the delicate question of the constitutionality of acts of law-making bodies. The delicacy of these questions, where one of the three co-ordinate departments of the government is called upon to annul the acts of another, justifies the attitude of the courts in declining, wherever possible, to pass upon the decision of constitutional questions. * * *

"If an act of the Legislature is repugnant to the Constitution, the courts have the power, and it is their duty so to declare."

There is a further fatal defect in plaintiff's complaint. The third paragraph alleges that the defendants executed a written contract with the plaintiff and attaches by reference a copy of the contract, as Exhibit A.

The next paragraph of the complaint alleges that plaintiff performed *all* of the terms of the contract.

The last paragraph of Exhibit A attached to the complaint contains this printed statement: "This agreement shall become effective *only* when accepted by your office in Seattle, Washington, and you [the plaintiff] shall notify me [the defendants] of such acceptance by letter."

The complaint is silent as to whether the plaintiff ever ac-

knowledged the acceptance of the agreement by a letter in writing to that effect.

R.C.M.1947, § 13-720, provides that "In cases of uncertainty * * * the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Two cases decided by this court on this question are Hart v. Barron, 122 Mont. 350, 204 P.2d 797, and Voyta v. Clonts, 134 Mont. 156, 328 P.2d 655.

Added to the failure to notify the defendants of plaintiff's acceptance of the contract is the rule of law in Johnson v. Elliot, 123 Mont. 597, 604, 218 P.2d 703, 706, wherein this court held that "To state a cause of action *ex contractu* the complaint must disclose a valid agreement, a right in the plaintiff and a breach by the defendant." This the plaintiff failed to do.

By reason of the manifest deficiencies in the complaint the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.