## JOSEPH A. ADELMAN AND ANOTHER v. CARL ONISCHUK AND OTHERS. LOWER MINNESOTA RIVER WATERSHED DISTRICT, APPELLANT.*

135 N. W. (2d) 670.

May 18, 1965—Nos. 39,569, 39,608.

*Certified to U. S. Supreme Court August 27, 1965.

*Raymond A. Haik, Robert A. Minish,* and *Erickson, Popham, Haik & Schnobrich,* for appellant.

*Vance B. Grannis, Sr., Grannis & Grannis, Thomas E. Ticen,* and *Kempf & Ticen,* for respondents.

*James E. Kelley, James C. O'Neill,* and *Bundlie, Kelley & Torrison,* for The Kelmar Corporation, amicus curiae.

*Mandt Torrison* and *Bundlie, Kelley & Torrison,* for Coon Creek Watershed Association, amicus curiae.

*Dennis Sobolik, Brink & Sobolik, Virgil C. Herrick,* and *Weaver, Talle & Herrick,* for Coon Creek Watershed District, Two Rivers Watershed District, and Joe River Watershed District, amici curiae.

*Robert W. Mattson,* Attorney General, *Frank J. Murray,* Deputy Attorney General, and *Victor J. Michaelson* and *Lawrence J. Vaubel,* Special Assistants Attorney General, for State of Minnesota, amicus curiae.

NELSON, JUSTICE.

Appeals from an order and the judgment entered pursuant thereto enjoining the Lower Minnesota River Watershed District (hereinafter referred to as the District) from proceeding further in carrying out a planned improvement of a portion of the Minnesota River.[1]

Plaintiffs commenced this action on February 21, 1964, contending that the Minnesota Watershed Act, Minn. St. c. 112, was unconstitutional and seeking an injunction permanently enjoining the District from proceeding with a project to improve the Minnesota River channel. The action also sought to enjoin the Dakota County auditor and commissioners from transferring funds to the treasurer of the District. The District filed a cross-claim against the Board of County Commissioners and the county auditor of Dakota County asking that they be ordered to pay it funds to meet Dakota County's share of the total cost of the channel-improvement project.

The order and judgment appealed from declared the statute to be unconstitutional, and the District to have no legal existence, and granted the injunctive relief requested. The relief sought by the District on appeal is a reversal of the order and judgment with directions to enter findings and judgment that the Minnesota Watershed Act is constitutional, that the District is authorized to proceed with the improvement project, and that the Dakota County board and auditor should pay to the treasurer of the District the balance of the funds due for the channel-improvement project.

It is clear that the primary purpose in the establishment of the District is to improve the navigability of the lower Minnesota River and that the immediate benefactors of such improvement would be those industrial corporations which currently use the river for commercial

---

[1] The judgment was entered after the notice of appeal from the order and the bond for costs had been filed although filing of the bond had the effect of suspending the right to enter judgment while the appeal from the order was pending. See, Minn. St. 605.10, 605.115, subd. 6; Rule 62.04, Rules of Civil Procedure; St. Paul & Duluth R. Co. v. Village of Hinckley, 53 Minn. 102, 54 N. W. 940. However, both appeals involve the same issues.

navigation. These corporations now must employ dredging firms to maintain stretches of the river, which are otherwise too shallow for commercial vessels, at proper depths. If the improvement is carried out as planned, those now using the channel for industrial purposes will be relieved of that burden since the United States Government has indicated that it will maintain the river once the initial improvement is made.

The Minnesota Watershed Act was enacted in 1955 to permit the development of an integrated program for the use of water. The legislature broadly declared the purpose of the act to be "the protection of the public health and welfare and the provident use of the natural resources" of the state. Minn. St. 112.34, subd. 1.

Section 112.36 of the act provides that a watershed district may be established by the Minnesota Water Resources Board for any or all of several purposes, including (1) control or alleviation of damage by flood waters; (2) improvement of stream channels for drainage, navigation, or any other public purpose; (3) regulating the flow of streams and conserving the waters thereof; (4) diverting or changing watercourses in whole or in part; and (5) providing and conserving water supply for domestic, industrial, recreational, or other public use.

It is clear from the foregoing that the act provides for the establishment of multiple-purpose watershed districts in order to develop and manage uniform and integrated programs of water use in separate areas. The first step in establishing a watershed district is the filing of a nominating petition signed by at least one-quarter of the freeholders of the proposed district or, alternatively, a petition from at least one-half of the counties in the proposed district. § 112.37. The Water Resources Board must then review the merits of the proposal at a public meeting, after which it may either approve or disapprove. §§ 112.38, 112.39. Should the Water Resources Board approve the establishment of the district, it is then required to appoint a board of managers who will become responsible for the administration of the district. §§ 112.39, 112.43.

The managers are to develop an overall plan, make it known to local governmental units, and present it for review to the Water Re-

sources Board at another public hearing. § 112.46. Thereafter any projects to implement the plan must be proposed by a petition. § 112.48. However, improvements financed by either the Federal or state government need not be initiated by petition. § 112.69, subd. 2.

When such a petition is filed, the managers are required to obtain necessary surveys and plans for construction of the proposed improvement and an engineer's report concerning it. § 112.49. They also appoint appraisers who determine the benefits or damages to lands affected by the proposed improvement. § 112.50. The managers can order construction only after a public hearing. § 112.54. The act provides for notice of such hearings by publication and also by mail to persons affected by a particular project. § 112.53.

The board of managers has the powers necessary to deal with problems of water use. To permit Federal participation in local watershed projects, the managers may cooperate or contract with any Federal agency. They may also acquire by purchase, gift, or by eminent domain, any necessary personal or real property and may contract for any construction project authorized under the act. § 112.43.

The act provides how an aggrieved taxpayer may obtain judicial review of actions taken thereunder. He may obtain review of decisions by the Water Resources Board establishing a district or confirming an overall plan in the district court of a county in which part of the watershed district is situated. § 112.792. If a board of managers authorizes a project, the taxpayer may appeal to the Water Resources Board and may obtain review of its decision in the district court. §§ 112.791, 112.792. Any confirmation of an appraisers' report may be challenged by a taxpayer through a direct appeal to the district court to review the amounts of benefits or damages determined. § 112.80, subd. 1.

The record shows that the first attempt by the Water Resources Board to establish a watershed district for the lower Minnesota River was held void in 1958 by the District Court of Hennepin County for failure to give proper notice of the hearing set for the purpose of establishing a district. Legislative acts followed amending the Minnesota Watershed Act to assure landowners sufficient notice of hearings

of the Water Resources Board for consideration of nominating petitions and of the hearings of the board of managers in a particular watershed district. L. 1959, cc. 240, 241, 245, 246; L. 1961, c. 601, §§ 13 and 14. Thereafter the county boards of Hennepin, Scott, Ramsey, Dakota, and Carver Counties petitioned the Water Resources Board to create the District, and the Water Resources Board considered the several petitions on December 16, 1959. Notice of that meeting was published in legal newspapers in all counties in the proposed district on November 26 and December 3, 1959. Notice of the hearing was also mailed to the county auditor of each county affected and to the chief executive officer of the affected municipalities. No objectors to the proposed district appeared at the meeting and by an order dated March 23, 1960, the Water Resources Board ordered the creation of the District and appointed its first Board of Managers. Although a right of appeal to the district court was provided to any person aggrieved by the order establishing the District under § 112.792, no appeal was taken by anyone.

In 1960 the Board of Managers retained an engineer to prepare an overall plan for the projects in the District. After contacting political subdivisions, property owners, and industry, the engineer prepared and submitted the overall plan to the Board of Managers, who thoroughly reviewed it and then presented it to the Water Resources Board in the summer of 1961. A hearing on the overall plan was held by the Water Resources Board on September 15, 1961, notice of which was mailed to all political subdivisions in the District and published in a newspaper in each county in the District.

Evidence concerning the problems facing the District—navigation, flooding, sedimentation, soil conservation, water supply, and mosquito control—was presented at the meeting. The Water Resources Board after consideration of the evidence approved the overall plan and ordered its adoption. This overall plan provided for a variety of projects including the one here involved, which calls for straightening and dredging a 9-foot-deep, 100-foot-wide channel in a 14-mile portion of the river.

The plan provided that the construction of the channel would be

performed by the Federal Government at an estimated cost of nearly $3,000,000, which it was to bear. The United States Congress authorized this construction in the River and Harbor Act of July 3, 1958. 72 Stat. 297. That act requires the local governmental body to supply without cost to the United States Government the lands, easements, and rights-of-way necessary for the construction of the channel, including any necessary changes in roads, and in addition to hold the United States free from damages due to construction. No one sought review, pursuant to § 112.792, of the order approving the plan.

The Board of Managers of the District scheduled a public hearing for June 12, 1962, to determine whether the channel improvement was in the public interest and, if so, whether the District should provide the items of local cooperation required by the Federal Government. These items were set forth in the notice of hearing, which also stated: "The cost of providing the local assurances will be paid by assessment against benefited property within the district."

The Board of Managers gave notice of the hearing to the landowners by mail, including every property holder of record. The names of those receiving mailed notice were taken from the tax records of the District. If the board was unable to locate particular landowners, local newspapers published that fact. The record indicates that about 100 persons attended the meeting. Maps of the project were displayed, explained by the District engineer, and discussed at the meeting. Evidence was presented to the Board of Managers about the project by persons of varied interests. At least three persons objecting to it appeared before the board. Those present were informed that local cooperation would be necessary and that up to $500,000 would be required from the District and would be assessed against the property owners in the area. Efforts were made by the board to acquaint everyone present with the purpose of the meeting and with the channel-improvement project.

On August 22, 1962, the Board of Managers reviewed the evidence presented at the June 12 meeting and on the basis of the evidence presented adopted a resolution by which it ordered the project and undertook to provide the items of local cooperation required by

the Federal Government. Although an appeal to the Water Resources Board from the order of the managers authorizing the project was explicitly made available by § 112.791, no appeals were taken contesting the authority of the District to undertake the channel project as ordered by the Board of Managers, nor was the constitutionality of the act challenged under any form of appeal relief made available by the Watershed Act.

On September 13, 1962, the Corps of United States Army Engineers accepted the August 22, 1962, resolution as the binding obligation of the District to provide the items of local cooperation. The letter of acceptance, however, contained a qualification as to the obligation of the United States to proceed if funds should not be available.

At the hearing of June 12, 1962, the Board of Managers of the District received a request from landowners, including industrial owners interested in the project, that the board receive recommendations on the appointment of appraisers and methods of appraisal. The board thereafter sought and considered such recommendations and attempted also to inform local governmental units of the District's progress on the project. An appraisal manual was prepared to acquaint landowners with the method of assessment to be followed. On October 24, 1962, the Board of Managers appointed three appraisers to determine the benefits and damages to lands within the area. In studying the problems encountered in appraising land within the area, the appraisers used detailed maps, aerial photographs, project plans, and surveys to supplement their actual inspection of the lands. They developed a system of land classification based upon an area formula and assessed all lands within each classification equally, regardless of present use and without regard to cash valuation.[2]

The appraisers filed their report on June 12, 1963, which showed

---

[2]Minn. Const. art. 9, § 1, provides in part:

"* * * Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes * * *. Provided, that the legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation * * *."

the benefits found to substantially exceed the amount of damages. Pursuant to § 112.69, subd. 2, the Board of Managers held a public hearing to consider confirmation of the appraisers' report September 10, 1963. Notice was mailed to the landowners pursuant to § 112.53, subd. 2. The Board of Managers served personally all owners of land to be condemned with notice of the hearing and in addition published a notice of the hearing which contained a legal description of the lands affected and the names of the owners. It is clear that notice of the September 10 hearing was received by the landowners who brought and who support the action involved on this appeal.

At the hearing objections to the report were raised and the landowners were informed as to the method of assessment. All landowners were given an opportunity to be heard. On September 12, the Board of Managers corrected various computation errors in the report and then approved it.

On the last day to appeal from the order confirming the appraisers' report, The Kelmar Corporation, a landowner assessed for the project, obtained a temporary restraining order in the District Court of Scott County enjoining the Board of Managers from filing the report with the auditors of Hennepin, Scott, and Dakota Counties and brought an action alleging that the Watershed Act was unconstitutional; that the District lacked authority to establish the project; that the appraisers had used an arbitrary formula in assessing the benefits; that there was no special benefit resulting from the project; and that necessary rights-of-way had not been condemned. After a hearing a temporary injunction was denied by the district court in an order issued November 26, 1963, the restraining order dissolved, and the appeal dismissed as to all issues except the amount of benefits assessed or the amount of damages awarded. No appeal has ever been taken from that order and the Scott County District Court's disposition of all charges of unconstitutionality alleged in that proceeding stands.

Following the decision in the Kelmar appeal, pursuant to §§ 112.60 and 112.69, subd. 2, the Board of Managers filed the appraisers' report with the county auditors of Hennepin, Scott, and Dakota Counties, listing assessments aggregating $414,402.75.

The auditors thereafter levied the assessments, and the auditors of Hennepin and Scott Counties immediately paid the shares of their counties to the District. The Dakota County auditor has paid the sum of $65,265.72, collected from the landowners in Dakota County who voluntarily paid their assessments. Payment of an additional $20,634.30 from other Dakota County landowners had been arranged for prior to the commencement of this action. The balance of the funds due the District from Dakota County was to be raised by the sale of general obligation bonds of the county on February 20, 1964. On February 11, at the request of plaintiffs the county board canceled the bond sale and ordered the Dakota County auditor to withhold payment to the District of all funds collected from assessment payments. The board apparently did not consider the effect of this action on the District, which had up to that time expended $55,000, nor the fact that the Federal Government had expended $62,000 on the project. Although the Federal Government was ready, willing, and able to begin construction May 1, 1964, commencement of the channel-improvement project has been delayed due to the failure of the District to provide the items of local cooperation. Its inability to do so resulted from the refusal of Dakota County to pay its share of the local costs.

It was not until after the project had been approved and authorized, benefits and damages had been determined, and money raised by the assessments had been expended that plaintiffs commenced the present litigation. They seek to enjoin further action by the District and allege that the Watershed Act and the District's actions taken thereunder were unconstitutional.

The District moved to dismiss the complaint and also to require the plaintiffs to post a bond under § 562.02. The trial court denied these motions and a motion by plaintiffs for an injunction, but refused to require the county board to pay its share of the costs for the project.

After trial without a jury the court found that c. 112 is so vague, ambiguous, discriminatory, and inconsistent that it is incapable of any reasonable interpretation or enforcement. It found also that the act is violative of the Fourteenth Amendment of the United States Constitution; of Minn. Const. art. 1, §§ 7 and 13; of Minn. Const. art. 4,

§ 27, because it embraces more than one subject and attempts to legislate by reference to other laws; and of Minn. Const. art. 9, § 1, because it attempts to provide for the assessment of benefits to plaintiffs' property without regard to cash valuation. The court concluded that plaintiffs were entitled to a permanent injunction enjoining defendants from doing any act in connection with the levy, collection, or enforcement of assessments for purported benefits to any land in Dakota County contained in the District.

The District contends on appeal that plaintiffs are in no position to maintain the present action for injunctive relief and that because of their failure to take advantage of their rights to appeal under the provisions of the Watershed Act they are no longer able to question the constitutionality thereof. Our agreement with these contentions makes it unnecessary to consider most of the assignments of error. Suffice it to say that the District contends that the Watershed Act is a constitutional exercise of legislative discretion which embraces one topic—the regulation and control of one of Minnesota's major natural resources, water; that there is no evidence that the District's actions were arbitrary and capricious; and that the record is clear that the District made every effort to acquaint the community with the project, to give notice to the landowners involved, and to develop a fair and equitable basis for assessing the benefits resulting from the project. The District further insists that if it is correct in its contentions and if the challenge of unconstitutionality of the act is without any basis upon this record, the Dakota County board should be directed to pay the balance of the funds due for the project as requested by the District's cross-claim.

It is a well-established rule and a basic prerequisite for injunctive relief that a clear showing must be made that any legal remedy that the complainant may have is inadequate. AMF Pinspotters, Inc. v. Harkins Bowling, Inc. 260 Minn. 499, 110 N. W. (2d) 348; Williams v. Rolfe, 257 Minn. 237, 101 N. W. (2d) 923.

This rule has been consistently applied in cases contesting the validity of assessments. Two Minnesota cases that strike to the very heart of this matter are Larson v. Freeborn County, 267 Minn. 383,

126 N. W. (2d) 771, and Village of Edina v. Joseph, 264 Minn. 84, 119 N. W. (2d) 809. The Larson case involved ditch proceedings and this court held that owners affected by county ditch proceedings may not enjoin the collection of assessments levied to meet the expense of the construction but are limited to procedures for review established by statute, saying (267 Minn. 385, 126 N. W. [2d] 772):

"* * * [O]ur decision in the instant case is governed by [Rosso v. Village of Brooklyn Center, 214 Minn. 364, 8 N. W. (2d) 219]. That was a taxpayer's suit to enjoin a village from enforcing the payment of assessments for drainage improvements. We squarely held that where simple and direct remedies under what is now Minn. St. 429.036 and c. 278 are available to taxpayers, a demurrer to the complaint should be sustained and equitable relief denied. The Rosso decision was cited and approved in [Land O' Lakes Dairy Co. v. Village of Sebeka, 225 Minn. 540, 31 N. W. (2d) 660] and more recently in Village of Edina v. Joseph, 264 Minn. 84, 100, 119 N. W. (2d) 809, 819, where we stated:

" 'The authorities generally indicate that relief against erroneous or illegal assessments will not be granted by a court of equity, if the property owner has an adequate remedy at law. If the statute or charter provides a remedy by appeal or otherwise, such remedy is generally exclusive and will preclude any resort to equity.' "

The principle that statutory remedies must be exhausted has been clearly spelled out, specifically in Land O' Lakes Dairy Co. v. Village of Sebeka, 225 Minn. 540, 31 N. W. (2d) 660, certiorari denied, 334 U. S. 844, 68 S. Ct. 1513, 92 L. ed. 1768, where this court said (225 Minn. 548, 31 N. W. [2d] 665):

"In order that there shall be no future confusion on this particular point of the law, we hold that in enacting M. S. A. c. 278 it was the intention of the legislature to provide an adequate, speedy, and simple remedy for any taxpayer to have the validity of his claim, defense, or objections determined by the district court in matters where the taxpayer claims that his real estate has been partially, unfairly, or unequally assessed, or that it has been assessed at a value greater than

its real or actual value, or that the tax levied against the property is illegal in whole or in part, or has been paid, or that the property is exempt from the tax so levied."

Other cases where the same result has been reached are cited in the Larson case. These cases clearly indicate that it is not enough to claim that one has been denied an adequate remedy at law when he has simply neglected to invoke available remedies providing for appeal in a timely manner.

We said in Rosso v. Village of Brooklyn Center, 214 Minn. 364, 368, 8 N. W. (2d) 219, 221:

"* * * It has been held by this court on numerous occasions that a taxpayer may not maintain a suit in equity to enjoin the collection of a tax or an assessment when he has an adequate remedy at law available to contest the proceeding or the collection of the tax or the assessment."

See, Wall v. Borgen, 152 Minn. 106, 108, 188 N. W. 159, 160; Schultz v. City of North Mankato, 176 Minn. 76, 222 N. W. 518.[3]

The authorities generally indicate that relief against erroneous or illegal assessments will not be granted by a court of equity if the property owner has an adequate remedy at law. If a statute or charter provides a remedy by appeal or otherwise, such remedy is generally exclusive and will preclude any resort to equity. Village of Edina v. Joseph, *supra*; 14 McQuillin, Municipal Corporations (3 ed.) § 38.210. Plaintiffs herein could challenge their assessments by the appeal authorized in the Watershed Act but may not seek injunctive relief to bar the project for which the assessments were levied.

The Watershed Act has provided landowners with a right to obtain judicial review of the amount of damages awarded and the amount of assessments by appeal to the district court. § 112.80. Plain-

---

[3]See, also, Republic Iron & Steel Co. v. Borgen, 187 Minn. 373, 245 N. W. 615; Braddock Iron Min. Co. v. Erskine, 155 Minn. 70, 192 N. W. 193; Kerr v. City of Waseca, 88 Minn. 191, 92 N. W. 932; Kelly v. Minneapolis City, 57 Minn. 294, 59 N. W. 304, 26 L. R. A. 92; Fajder v. Village of Aitkin, 87 Minn. 445, 92 N. W. 332; Albrecht v. City of St. Paul, 47 Minn. 531, 50 N. W. 608.

tiff Adelman and some of the Dakota County landowners appearing as witnesses for plaintiffs in this action have utilized this right to appeal their assessments and their actions are pending in the district court. These landowners are asserting the invalidity of the assessments on the same grounds as are asserted in the present action and since all matters raised in this action are or could have been before the court in a legal action afforded by the statute, the present equitable action for an injunction does not lie. See, Webb v. Lucas, 125 Minn. 403, 147 N. W. 273; Heller v. Schroeder, 182 Minn. 353, 234 N. W. 461; Garrett v. Skorstad, 143 Minn. 256, 173 N. W. 406.

Sections 278.01 to 278.05 constitute a review statute enacted by the legislature in order to provide adequate, speedy relief to taxpayers in situations like that presented in the instant case and thus furnish another adequate legal remedy. Larson v. Freeborn County, *supra*; Land O' Lakes Dairy Co. v. Village of Sebeka, *supra*; Rosso v. Village of Brooklyn Center, *supra*.

■ The finding of the trial court that this action was a class action cannot be sustained. See, Village of Edina v. Joseph, *supra*. The criteria for the bringing of a class action are established by Rule 23.01, Rules of Civil Procedure.[4] It is clear that plaintiffs' action is not a true class action under Rule 23.01(1) since the right that plaintiffs seek to assert on behalf of all landowners is not joint, common, or secondary. Neither does the action involve several claims asserted against specific property, provided for in Rule 23.01(2). Nor can it be classed as a "spurious" class action, provided for in Rule 23.01(3), since plaintiffs have not alleged that the class right involves a common question of law or fact and that common relief is sought.

■ Although it is unnecessary to consider further assignments of error, we think it clear that the court below was in error in allowing plaintiffs at this late stage in the project proceedings to question the

---

[4]The requisites of a class suit are discussed in Kainz v. Anheuser-Busch, Inc. (7 Cir.) 194 F. (2d) 737, 740; Slezak v. Ousdigian, 260 Minn. 303, 110 N. W. (2d) 1; Knowles v. War Damage Corp. 83 App. D. C. 388, 391, 171 F. (2d) 15, 18; and Hansberry v. Lee, 311 U. S. 32, 41, 61 S. Ct. 115, 118, 85 L. ed. 22, 27, 132 A. L. R. 741, 746.

constitutionality of the Watershed Act. Plaintiffs had several opportunities to assert their objections to the creation of the District and to the assessments levied by the Board of Managers for the channel-improvement project. Any proceeding in equity thereafter was untimely. The first of several appealable orders was entered March 23, 1960, when the Water Resources Board established the District. The second of such appealable orders was entered on September 15, 1961, when the Water Resources Board affirmed the overall plan of the District. The third opportunity for review occurred on August 22, 1962, when the Board of Managers adopted the resolution establishing the channel-improvement project. Again plaintiffs had a right of appeal under the statute and could have asserted all their objections, constitutional or otherwise, but no such appeals were taken even though mailed or published notice was given to all owners of land subject to assessment. Plaintiffs also had a right of appeal under the Watershed Act from the order confirming the appraisers' report adopted September 12, 1963. Plaintiffs were personally served and attended the hearing on the report, but took no timely appeal on all the issues now being raised.

It is not to be overlooked that The Kelmar Corporation unsuccessfully sought an injunction on the ground that the Watershed Act was unconstitutional. The District had delayed incurring expense until all constitutional issues relating to its procedure and authority were disposed of by the Scott County court action. Once the Scott County court had held the act to be constitutional the District moved ahead with the project, which is now well under way. All steps necessary to furnish items of local cooperation are nearly complete—lands have been assessed, assessments have been levied, money has been paid and expended by the District. Can plaintiffs now, after ignoring all opportunities to appeal any claimed constitutional issues, be heard to say they are entitled to an injunction? Certainly failure to exhaust available remedies in a timely manner when those remedies are simple, direct, and expedient constitutes a bar to an unseasonable action in equity. It cannot be said that the opportunities for plaintiffs to raise objections were either impractical or inadequate. As was said in Larson v. Free-

born County, 267 Minn. 383, 387, 126 N. W. (2d) 771, 773, plaintiffs "have not been denied an adequate remedy at law but have simply neglected to invoke available remedies in a timely manner."

A person who thinks that his constitutional rights are invaded by an act of the legislature or of an administrative board must raise the objection at the earliest available opportunity and exhaust the remedies which may have been provided for the correction of unreasonable and improper orders before he will be permitted to make an attack on the constitutionality of the statute. See, Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. ed. 839; Chicago-Sandoval Coal Co. v. Industrial Comm. 301 Ill. 389, 134 N. E. 158; State ex rel. Powell v. State Bank of Moore, 90 Mont. 539, 4 P. (2d) 717, 80 A. L. R. 1494; Western & Atlantic R. v. Michael, 172 Ga. 561, 158 S. E. 426; Union Interchange, Inc. v. Allen, 140 Mont. 227, 370 P. (2d) 492; 16 Am. Jur. (2d) Constitutional Law, § 115.

The only constitutional question that can be raised at this stage of the proceeding is whether the plaintiffs have been deprived of property without due process of law by an inadequate condemnation award or by an assessment in excess of the benefits conferred by the project, and the proper way to raise this question is by an appeal under § 112.80 from the order of the Board of Managers confirming the appraisers' report.

Since plaintiffs failed to challenge the validity of the proceedings of the District, in a timely manner when the opportunity was present, they may not do so by this action. Clearly the public policy approved in Larson v. Freeborn County, *supra,* suggests that a proceeding properly initiated by a governmental body ought to be free from harassment by landowners who have slept on their rights.

However, we think it clear that in the absence of flagrant abuse or purely arbitrary action the legislature consistently with both the State and Federal Constitutions may provide for the establishment of local watershed districts to include real property which will be specially benefited by drainage, flood control, or other improvements therein and may also provide that such districts, in order to acquire, construct, maintain, and operate such improvements, may impose special tax bur-

dens upon the lands benefited. It has been held both by State and Federal courts that where, within the scope of its power, the legislature itself has found that the lands included in a special assessment district will be specially benefited by improvements, prior appropriate and adequate inquiry is presumed and the finding is conclusive. Chesebro v. Los Angeles County Flood Control Dist. 306 U. S. 459, 59 S. Ct. 622, 83 L. ed. 921; People ex rel. Chapman v. Sacramento Drainage Dist. 155 Cal. 373, 103 P. 207. In Louisville & N. R. Co. v. Barber Asphalt Paving Co. 197 U. S. 430, 25 S. Ct. 466, 49 L. ed. 819, wherein a property owner claimed that a special assessment against its property for paving was unconstitutional because its use of the property made it impossible for the improvement to benefit the land, the United States Supreme Court, through Mr. Justice Holmes, said (197 U. S. 435, 25 S. Ct. 467, 49 L. ed. 822):

"* * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which, as we already have implied, a legislature is warranted in adopting. But, if so, we are of opinion that the legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use."

It is clear that the legislature may establish public corporations that are empowered to undertake improvement projects in order to conserve and regulate use of a natural resource. The Minnesota Watershed Act represents a solution which the legislatures of this and other states with similar acts have developed to deal with the complex problems of water conservation and use. As we see it, the Watershed Act embraces a single subject—water—within the meaning of Minn. Const. art. 4, § 27, and its title encompasses the one general purpose of the act. The trial court found the act attempted to legislate by reference to other laws, but it has long been settled in this state that our legislature has authority to enact laws which refer to existing legislative acts.

It is clear also that the Watershed Act meets the requirements of due

process since it affords a right of review and requires notice to all landowners affected by an improvement project. Looking at the act from every angle, we think it appears clearly that the solution found by the legislature of Minnesota to deal with the problems of water conservation and use is not so inherently unreasonable that it may be struck down on constitutional grounds.

We have carefully considered all of the assignments of error raised on this appeal, but will not discuss them further in view of our conclusion that the trial court erred in granting an injunction. The order and judgment appealed from must be reversed, and the trial court is directed to order that Dakota County proceed forthwith to comply with the assessment requirements in the same manner as other county boards have done.

Reversed with directions.

OTIS, JUSTICE (concurring specially).
I concur in the result.