In re the Matter of the DELINQUENT TAXES OF Leon CARNEY, Section 33, SW ¼, Chanarambie Township, Section 32, SE ¼, Chanarambie Township, Leon Carney, Respondent,

v.

MURRAY COUNTY BOARD OF COMMISSIONERS in their official Capacity, Appellant.

No. C2–85–1430.

Court of Appeals of Minnesota.

April 15, 1986.

Margaret K. Erickson, Southern Minnesota Regional Legal Services, Inc., Worthington, for respondent.

John A. Doyle, Asst. Murray Co. Atty., Slayton, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul A. Strandberg, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae State of Minnesota.

Heard, considered and decided by HUSPENI, P.J. and FOLEY, and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Murray County Board of Commissioners (Murray County) appeals from a June 28, 1985 order and a July 1, 1985 judgment directing the Murray County Auditor to delete assessments for noxious weed eradication on Leon Carney's property. We affirm.

## FACTS

As a result of aerial spraying of noxious weeds on Leon Carney's property at Murray County's direction, Carney was assessed $1,055.67. He protested the assessment pursuant to Minnesota Statutes Chapter 278, but the case was dismissed without prejudice because the petition was not filed within the required statutory time. Carney was granted, however, leave to re-open the action as an aggrieved landowner as provided under Minnesota law. *See* Minn. Stat. §§ 279.15, .17 (1984).

On July 13, 1983, the county agricultural inspector and the township board members toured Leon Carney's property and discovered large acres of Canadian and musk thistle infestation. Carney was provided with written notice of these findings and recommendations on eradication. Carney, a former weed inspector, testified that he then destroyed all the thistles by mowing and backpack spraying but did not identify the pesticide used.

The county inspector re-inspected the property on July 20, 1983, and claimed that Carney had done nothing to eradicate the noxious weed infestation. The county inspector conducted a third inspection of Carney's property on August 4, 1983 which revealed an abundance of Canadian thistles. A second notice of eradication was then mailed to Carney who claimed he rechecked the area and sprayed the few weeds that were missed.

From a fourth inspection on August 10, 1983, conducted with the aid of binoculars at a vantage point on the west section of the property, the county inspector and the township weed inspector concluded that

certain areas of the property were still concentrated with thistles. The next day a commercial aerial herbicide applicator was hired by the county inspector, and the property was sprayed (with 2–4–D herbicide) on August 21, 1983. The commercial applicator testified that he was able to discern Canadian and musk thistle along the southeast quarter of the property from the air but that he was waved off the property by Carney before he could complete the spraying. A second aerial spraying was conducted on August 26, 1983. Carney telephoned the county inspector and advised her to check with the Department of Natural Resources (DNR) since portions of the land sprayed consisted of native prairie land. The inspector only recalled Carney stating that spraying his property was against the law. Carney stated that he had been a participant in the native prairie program since the program's inception in 1980. A wild life specialist with the DNR testified that a landowner can qualify for a tax credit against real estate if the land is maintained in its natural state, and, indeed, once qualified, the landowner is obligated to maintain the property in an undisturbed state. A prairie ecologist testified that Carney was an owner of outstanding native prairie, and in fact, the only private owner of a native prairie preserve in Murray County, with more than 200 plant species. The wild life specialist and the ecologist agreed that the August spraying was largely ineffective.

A professor of agronomy specializing in weed control testified that both fall and spring application of 2–4–D to musk thistle had been effective in four states, including Minnesota, and added that in Minnesota, spraying of the musk thistle before the second year of the plant's growth is critical regardless of the time of year the plant is sprayed. He went on to state that the effectiveness of fall spraying of Canadian thistle was uncertain; studies indicated that spraying of the plant in the spring was 83% effective and 73% effective in the fall. A newsletter by the University of Minnesota Extension Services recommended fall treatment for both species of thistles.

The county weed inspector's supervisor testified that between the spring of 1980 and the fall of 1984, government eradication of thistle infestation occurred on 57 occasions, including 12 aerial sprayings of non-crop land under private ownership, including Carney's property.

The trial court determined that Carney's property was not infested with noxious weeds at the time of the spraying, that the county weed inspector did not view the property in a manner that reasonably allowed her to determine the existence of noxious weeds, that even if noxious weeds were present on Carney's property in violation of section 18.191, it was unreasonable for Murray County to spray the property so late in the growing season when such action was of minimal effect, and that it did not justify the expenses incurred. The court further found that the county weed inspector should have obtained professional advice as to the value of aerial spraying in late August. The court concluded that Carney had not violated section 18.191 and discharged all assessments. This court subsequently granted the State of Minnesota's motion to file an amicus brief in this appeal.

### ISSUES

1. Did the trial court err when it determined that respondent had fulfilled his duty as a landowner to control noxious weeds on this property?

2. Did the trial court err when it concluded that on-site inspection of property was necessary before aerial spraying was conducted and when it determined that the agricultural inspector should have obtained professional advice before authorizing the spraying of respondent's property?

### ANALYSIS

1. The county commissioners did not move the court for amended findings or for a new trial. Therefore, this court's standard of review is limited to whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment. *Gruenha-*

*gen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976); *Wood v. Schlagel,* 375 N.W.2d 561, 563 (Minn.Ct.App.1985); *Schatz v. Davis,* 354 N.W.2d 522, 524 (Minn.Ct.App.1984). A trial court's findings will be upheld by an appellate court unless clearly erroneous. Minn.R.Civ.P. 52.01. Moreover, in a trial without a jury, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Strouth v. Wilkison,* 302 Minn. 297, 299, 224 N.W.2d 511, 513–14 (1974) (citation omitted). Finally, an appellate court must view the evidence in a light most favorable to the prevailing party. *G.C. Kohlmier, Inc. v. Albin,* 257 Minn. 436, 442–43, 101 N.W.2d 909, 914 (1960).

The framework for this appeal is provided by statute:

> Except as otherwise specifically provided in sections 18.181 to 18.271, 18.281 to 18.311, and 18.321 to 18.322, it shall be the duty of every occupant of land or, if the land is unoccupied, the owner thereof, or his agent, or the public official in charge thereof, to cut down, otherwise destroy, or eradicate all noxious weeds as defined in section 18.171, subdivision 5, standing, being, or growing upon such land, in such manner and at such times as may be directed or ordered by the commissioner, his authorized agents, the county agricultural inspector, or by a local weed inspector having jurisdiction.

Minn.Stat. § 18.191 (1984).

"Noxious weeds" is defined as "the annual, biennial, and perennial plants which are deemed by the commissioner to be injurious to public health, public roads, crops, livestock and other property." *Id.* § 18.-171, subd. 5. There is no dispute between the parties that respondent received proper notice. *See id.* § 18.271, subds. 1, 2. Section 18.271 further provides that when a person does not comply with the notice to eradicate:

> the local weed inspector having jurisdiction, or if there is no local weed inspector, the county agricultural inspector or the commissioner, shall cause the same to be·cut down, otherwise destroyed or eradicated at the expense of the county in which the land affected is situated,

and claim for such expense of serving of notices, together with the cost of cutting down, otherwise destroying or eradicating the noxious weeds, is hereby made a legal charge against the county in which the lands are located.

*Id.* § 18.271, subd. 3.

█ An aggrieved landowner may object to an assessment against his or her property and request a hearing. *See id.* §§ 279.-15, .17. The parties here agreed to waive this hearing requirement and rely on evidence submitted in a prior hearing on October 8 and November 13, 1984.

█ The trial court's determination that Carney complied with the notices to eradicate is essentially a determination based on the witness' credibility. Carney testified that he mowed and sprayed the weeds shortly after receiving the July notice and again in August. The county weed inspector testified that her latest inspection on August 10, 1983, with the use of binoculars, revealed to the contrary. The trial court questioned this inspection, concluding that "[t]he manner in which the inspection was conducted did not contain the element of reliability necessary to warrant aerial spraying * * *."

Carney, in addition to the county weed inspector, had a sound understanding of the eradication process. When conflicting testimony on factual issues is provided, the trial court is in the better position to judge the credibility of the witnesses, and its findings will not be disturbed except in the most unusual of circumstances. *Berry v. Goetz,* 348 N.W.2d 376, 378 (Minn.Ct.App. 1984). The court believed Carney.

There was contradictory testimony concerning the effectiveness of aerial spraying of musk thistle in late August. The commissioners do not address the effect of aerial spraying on Canadian thistle, and so, even if the evidence supported the effectiveness of spraying musk thistle, it did not support a similar finding with regard to Canadian thistle.

2. The trial court's requirement of a type of on-site inspection of property be-

fore aerial spraying can be authorized is described in its memorandum:

The Court has concluded from the evidence that those who participated in the observation of Mr. Carney's property to determine the condition of the noxious weeds did not inspect the property to the extent which the law contemplates before ordering the property sprayed. The manner of in which the inspection was conducted *did not contain the element of reliability necessary to warrant aerial spraying, a procedure which the Court considers should be taken only upon a flagrant infestation of noxious weeds and a demonstration on the part of the land owner that he or she will not cooperate with county authorities.*

\* \* \* \* \* \*

It *is the position of the Court that before aerial spraying of farm lands is ordered, the condition of the noxious weeds should be determined by a personal examination of the fields in question. The person charged with such responsibility should obtain permission from the land owner to walk the land to determine the extent of noxious infestation.* If a landowner resists such inspection, legal action is available to obtain a Court order requiring the landowner to show cause as to why a weed inspector should not be permitted to enter upon the land. By such procedure, reliable evidence can be obtained so as to eliminate the lack of foundation necessary to support intervention by county authorities to eradicate or destroy an undue infestation of noxious weeds.

(emphasis supplied).

Statutory law provides that each local inspector is "to examine all lands, \* \* \* in the territory over which his jurisdiction extends." Minn.Stat. § 18.241, subd. 1 (1984).

■ The commissioner and amicus argue that neither section 18.241 nor section 18.-271 creates a duty to conduct an on land inspection for noxious weeds. We agree. Section 18.241 provides in part:

For the purpose of performing his duties and exercising his powers each local weed inspector, or county agricultural inspector, the commissioner or his agents *may enter upon any land* without consent of the owner and without being subject to any action for trespass or any damages.

*Id.* § 18.241, subd. 4 (emphasis supplied).

Since local weed inspectors are required to "examine *all* lands" (we note that native prairie land is not exempt), it seems reasonable to conclude that the inspections must be conducted in a *reasonable* manner.

The statute vests broad powers in the inspector. He must in each case determine from the facts before him whether or not any action should be taken. He must further determine the manner in which he will take action. \* \* \* In arriving at his decision the inspector must act in a *reasonable manner and he should have facts before him which will reasonably substantiate the action he takes.*

Op. Minn. Att'y Gen. 322 G (June 3, 1949) (emphasis supplied).

The form of examination is within the discretion of the inspector.

■ Nor did the county inspector have a duty to seek professional advice before proceeding with aerial spraying. Qualifications for an agricultural inspector are provided in Minnesota Rules, part 1505.0760. An agricultural inspector:

A. must be physically able to perform the duties connected with the position; may be asked to have a physical examination at county expense;

B. must submit legible required reports pertaining to the position;

C. must have a valid driver's license and have a car at his disposal or be able to obtain one;

D. must devote necessary time to the position as determined by the Minnesota Department of Agriculture; and

E. must not engage in activities which may be construed by the Minnesota Department of Agriculture as be-

ing a conflict of interest with the duties of the position.

Minn. R. 1505.0760 (1985).

The record is devoid of any evidence suggesting that the county inspector was not "qualified" as envisioned under part 1505.-0760. In fact, the record reflects that the county inspector did not make the decision to conduct aerial spraying on her own but rather had conferred with both the township weed inspector and her supervisor before authorizing a commercial application of 2–4–D herbicide. While the trial court's statutory interpretation was rather expansive under the circumstances of this case, it was harmless error. Resolution of the issues here centered on witness' credibility. Findings based on such an assessment must be upheld unless clearly erroneous. *See* Minn.R.Civ.P. 52.01. There is no clear error.

## DECISION

The trial court did not err in determining that respondent had fulfilled his duty to eradicate noxious weeds on his property, that appellant's aerial spraying of the property in late August was minimally effective, and that assessments for the eradication were unreasonable. Although the trial court erred when it imposed a general duty of on-site inspection and professional consultation in this case before aerial spraying was properly conducted, the error was harmless because the primary basis for the trial court's decision was an assessment of witness' credibility.

Affirmed.