William OMDAHL, individually, and
William Omdahl, on behalf of the
State of Minnesota, Respondent,

v.

William J. HADLER; Larry Rud, et al.;
and the State of Minnesota acting
through Jim Nichols, Commissioner of
the Department of Agriculture, Appellants.

No. C5–90–612.

Court of Appeals of Minnesota.

Aug. 21, 1990.

356

Michael Williams, Myhre, Drenckhahn & Williams, P.A., Warren, for respondent.

Wayne Swanson, Polk County Atty., Crookston, for appellant Hadler.

Brian Rokke, Warren, for appellants Rud, Hamrick, Laymon, Comstock Tp. and Helgeland Tp.

Hubert H. Humphrey, III, Atty. Gen., Scott R. Strand, Asst. Atty. Gen., St. Paul, for appellant State of Minn.

Considered and decided by FOLEY, P.J., and KALITOWSKI and LOMMEN[*], JJ.

## OPINION

KALITOWSKI, Judge.

Appellants challenge the judgment entered pursuant to the trial court's order granting summary judgment for respondents holding that the grasshopper control law does not provide counties with the authority to certify the costs associated with the grasshopper spraying as a lien against the landowner's property.

## FACTS

The drought of 1988 caused the state's grasshopper population to increase substantially. In the spring of 1989, the State Department of Agriculture determined that the increased population posed a risk to agricultural production and that there was likely to be an emergency situation requiring state action to eradicate the overpopulation of grasshoppers.

In response to this emergency situation, the Minnesota legislature enacted a new grasshopper control law as part of the 1989 omnibus agricultural bill. The law provided that:

> The Commissioner of Agriculture shall designate townships of counties that have had grasshopper surveys showing economic damage or potential economic damage as a grasshopper control zone where control programs under sections 18.0223–18.0226 will be undertaken.

Minn.Stat. § 18.0223 (1989). The law further provided that:

> The Commissioner of Agriculture shall develop and implement a grasshopper control program to prevent crop damage in the grasshopper control zone. Within grasshopper control zones the Commissioner, landowners, and local weed inspectors have the same authorities and duties under chapter 18 for grasshoppers as if grasshoppers are noxious weeds under chapter 18.

Minn.Stat. § 18.0225 (1989).

The state noxious weed law, Minn.Stat. §§ 18.171–.315 (1988), authorizes county agricultural inspectors and local weed inspectors to order farmers and other landowners to take prompt steps to eradicate or control noxious weeds on their property. If a landowner fails to comply, the local government may arrange for eradication of the weeds and assess the cost on the landowner's property tax statement. Minn. Stat. § 18.271, subd. 3 (1988).

In the summer of 1989, pursuant to the new grasshopper control law, the Commissioner of Agriculture determined that all of Marshall and Polk Counties should be designated as grasshopper control zones. Respondent William Omdahl owns land in both Polk and Marshall Counties. Omdahl's lands in both counties were inspected by the local township officers and the county weed inspectors. The inspectors directed Omdahl to spray his lands for grasshoppers. Omdahl refused to comply with this request and the weed inspectors ordered Omdahl's land sprayed.

Before the township officers certified their spraying costs to the respective county auditors, Omdahl filed suit in Marshall County district court requesting a temporary restraining order preventing the county, the officers, the township or the Commissioner of Agriculture from certifying their costs to the auditors and from ordering further spraying on Omdahl's land. Omdahl alleged that the grasshopper control law violated both the due process and equal protection clause of the federal and state constitutions. Further, Omdahl al-

---

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

leged that the actions of the Department of Agriculture violated the Minnesota Environmental Policy Act. The trial court granted Omdahl's request for a temporary restraining order on August 15, 1989. The trial court subsequently issued a temporary injunction against the appellants concluding that the grasshopper control law violated the due process clause.

On December 19, 1989, the trial court issued an order granting Omdahl's motion for summary judgment on the basis that the grasshopper control law violated due process. The court based its decision on the fact that the grasshopper control law did not provide Omdahl a right to a hearing either before or after the lien was placed upon his lands. The trial court denied summary judgment on the claims that the grasshopper control law violated the equal protection clause and the state environmental laws finding there were material issues of fact in dispute.

On December 27, 1989, appellants moved the trial court for an amended judgment. On March 12, 1990, the trial court issued a new order amending its conclusions of law. The trial court deleted its determination that the grasshopper control law violated due process. Instead, the court determined that summary judgment should be granted because the grasshopper control law did not authorize the county auditors to do any act with regard to the spraying of grasshoppers. Therefore, the auditors could not assess the costs of spraying for grasshoppers onto Omdahl's tax statement.

Appellants challenge the judgment entered pursuant to the amended order for summary judgment.

## ISSUES

1. Does the grasshopper control law authorize the county auditor to pay the costs of grasshopper spraying and to certify those costs as a lien upon Omdahl's lands?

2. Does the grasshopper control law violate the due process clause?

3. Does the grasshopper control law violate the equal protection clause?

4. Did the Commissioner of Agriculture violate Minn.Stat. ch. 116D?

## ANALYSIS

### I.

In a review of a summary judgment, this court must determine whether there are any issues of material fact or whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hospitals and Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

Ascertaining and effectuating the intent of the legislature is the object of all statutory interpretation. Minn.Stat. § 645.16 (1988).

The trial court granted summary judgment for Omdahl on the basis that there is no statutory authority for the auditor of Polk County or Marshall County to place the expense of the grasshopper eradication on Omdahl's land as a lien in favor of the county against the land involved, nor to certify and enter the lien upon the tax books as a tax upon the land to be collected with other real estate taxes.

The grasshopper control law as originally enacted states:

> Within grasshopper control zones the Commissioner, landowners, and local weed inspectors have the same authorities and duties under chapter 18 for grasshoppers as if grasshoppers are noxious weeds under chapter 18.

Minn.Stat. § 18.0225 (1989).

Minn.Stat. § 18.271, subd. 3 (1988), of the Noxious Weed Control Act provides that when a person fails to destroy any noxious weeds after being served with notice, the county agriculture inspector or the Commissioner of Agriculture have the authority to destroy the weeds at the expense of the county in which the land affected is situated.

> After such cutting down, otherwise destroying or eradicating of noxious weeds, the officer causing the same to be done shall find verified and itemized statements of the costs of all services rendered in connection with serving of notices and cutting down, otherwise de-

stroying or eradicating the noxious weeds on each separate tract or lot of land, with the county auditor in which such lands are located, who shall immediately issue proper warrants to the persons named therein for the amount specified. The amount of such expenses is a lien in favor of the county against the land involved and shall be certified to by the county auditor, and entered on the auditor's tax books as a tax upon such land, and shall be collected as other real estate taxes are collected. The amount of such expenses, when collected shall be used to reimburse the county for its expenditure in this regard.

Minn.Stat. § 18.271, subd. 3.

The trial court determined that because the grasshopper control law did not specifically mention counties, county auditors could not assess the costs of spraying. We disagree. We find the legislature intended that counties and their auditors have the authority to certify the costs of spraying and to enter those costs as a tax upon the landowner's property. The plain language of the law indicates the legislature intended to handle grasshopper control in the same manner as noxious weed control. Under the noxious weed control act, the county has the authority to certify the costs to the county auditor to be entered as a tax on the property.

In 1990, the legislature amended various sections of the grasshopper control law, including section 18.0225 to read:

> Within grasshopper control zones the Commissioner, *counties,* local weed inspectors and landowners have the same authorities and duties under chapter 18 for grasshoppers as if grasshoppers are noxious weeds under chapter 18. (emphasis added)

1990 Minn. Laws ch. 607, sec. 1.

■ Generally, a law is not construed to be retroactive unless that is clearly the intent of the legislature. Minn.Stat. § 645.21 (1988). However, an act clarifying a statute shall be read retroactively. *Nardini v. Nardini,* 414 N.W.2d 184, 196 (Minn.1987), *Carlson v. Lilyerd,* 449 N.W.2d 185, 190 (Minn.App.1989).

■ Where the legislature's prompt reaction to a court's construction of an applicable statute indicates a disagreement with the court's understanding of the legislative intent in initially adopting the statutes and not a change in the legislative policy, "it is not a question of retroactivity, but more merely akin to a clarification." *Hoben v. City of Minneapolis,* 324 N.W.2d 161, 163 (Minn.1982).

■ While the legislature in amending the grasshopper control law did not specify that the word "counties" was added as a clarification, we find the change was in response to the trial court's interpretation that counties were excluded from section 18.0225. Therefore, we find that this amendment is merely a clarification of the original statute and that the earlier omission of the word "counties" from the law does not require us to construe the statute so as to ignore the stated legislative intent.

## II.

In its initial order granting summary judgment, the trial court held the grasshopper control law violated due process because it does not provide the landowners with a right to a hearing either before or after the lien is placed upon their land.

Appellants argue that although the grasshopper control law and noxious weed law do not contain their own administrative or judicial appeals procedure, the appeal provisions of Minn.Stat. ch. 278 and 279 apply to the grasshopper control law and satisfy the requirements of due process.

■ The trial court initially found that the appeal provisions of Minn.Stat. ch. 278 and 279 are not applicable to the grasshopper control and noxious weed laws because they are "special laws" excluded from the applicability of chapters 278 and 279 remedies.

Minn.Stat. § 278.01, subd. 1 provides:

> Any person having any estate, right, title or interest in or lien upon any parcel of land, who claims that * * * the tax levied against the same is illegal, in whole or in part, * * * may have the validity of the

claim, defense or objection determined by the district court of the county in which the tax is levied or by the tax court * * *.

Subdivision 3 then states:

The procedures established by this section are not available to contest the validity of or amount of any special assessment made pursuant to chapters 429, 430, any special law or city charter.

In its amended judgment, the trial court deleted its conclusion that the grasshopper control law was a special law. The court concluded, however, that Minn.Stat. ch. 278 did not apply, finding that chapter 278 applies to property tax in general, and not to special assessments. We disagree.

First, we note that this court has indirectly acknowledged the availability of the procedures under chapters 278 and 279 for challenging assessments made under the noxious weed law. *See Schleusner v. Murray County*, 416 N.W.2d 478 (Minn.App. 1987), *pet. for rev. denied* (Minn. Jan. 28, 1988); *Carney v. Murray County Board of Commissioners*, 384 N.W.2d 920 (Minn. App.1986). In addition, the Minnesota Supreme Court has held specifically that the appeal provisions of chapter 278 apply to special assessments as well as general taxes. *Rosso v. Village of Brooklyn Center*, 214 Minn. 364, 369, 8 N.W.2d 219, 221 (1943).

The trial court was correct in its amended order that the grasshopper control law is not a "special law" to exclude it from the application of chapter 278 and 279 appeal remedies. Further, we hold the appeal provisions of Minn.Stat. ch. 278 and 279 are available to landowners to contest the lien placed on land under the grasshopper control law. Thus, we must now determine whether the appeal procedures satisfy due process.

Appellants argue the mere imposition of a nonpossessory statutory lien on land to recover costs incurred is not a significant enough deprivation of property to trigger due process protections. Further, appellants contend that even if there is a deprivation of property, the procedural safeguards in place under chapters 278 and 279 satisfy due process requirements.

The basic requirements of the due process clause are notice and an opportunity for a hearing appropriate to the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

■ In determining whether procedural safeguards violate the due process clause, the courts balance three factors: 1) the private interest that will be affected, 2) the government's interests, and 3) the availability of additional procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1973). In applying the balancing test, this court is also mindful that the statute is entitled to a strong presumption of constitutional validity. *See Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983).

■ Under Minn.Stat. § 278.01, a landowner has the right to appeal a tax levied upon his property by filing a claim with the district court or the tax court. A hearing is held after the tax lien has been imposed. Landowners who are successful in their suits are entitled to refunds, interests and allowable costs and disbursements. Minn. Stat. § 278.07 (1988).

The U.S. Supreme Court and the Minnesota Supreme Court have consistently held that post-deprivation remedies are satisfactory in the area of collecting taxes. *See Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Adelman v. Onischuk*, 271 Minn. 216, 135 N.W.2d 670 (1965); *Rosso v. Village of Brooklyn Center*, 214 Minn. 364, 8 N.W.2d 219 (1943); *Sisson v. Triplett*, 428 N.W.2d 565 (Minn.1988).

Under *Phillips* and *Sisson*, the U.S. Supreme Court and the Minnesota Supreme Court hold that:

mere postponement of a hearing until after seizure of the property is not a denial of due process if the opportunity given for the ultimate judicial determination of the liability is adequate.

*Sisson,* 428 N.W.2d at 569 (quoting *Phillips,* 283 U.S. at 596–597, 51 S.Ct. at 611–612).

In balancing the landowner's interest in avoiding payment for unnecessary spraying against the government's interest in recovery of its costs in dealing with an emergency situation, we find the post-deprivation remedies provided by chapters 278 and 279 are adequate to meet the requirements of due process. Therefore, we need not address appellant's initial argument that the imposition of a nonpossessory statutory lien is not a significant enough deprivation of property to require due process protections.

### III.

Respondent argues the grasshopper control law is unconstitutional because it violates the equal protection clause of the federal and state constitutions. The trial court did not decide this issue, finding there were material issues of fact in dispute. However, we address it here, because we find as a matter of law the statute does not violate the equal protection clause.

■ A statute will ordinarily survive an equal protection attack as long as the challenged classification is rationally related to a legitimate government purpose. *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 458, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).

Respondent contends that the grasshopper control law violates the equal protection clause because it only applies in grasshopper control zones which the Commissioner of Agriculture has designated. He argues that the law is unconstitutional because of the possibility that the law might treat two similarly situated landowners differently based on their geographical location.

■ Geographical distinctions alone, however, do not violate equal protection as long as they have a rational basis. *Fort Smith Light Company v. Paving Dist.,* 274 U.S. 387, 391, 47 S.Ct. 595, 597, 71 L.Ed. 1112 (1927).

■ It is clear that the geographical distinctions in the grasshopper control law have a rational basis. The legislature was faced with an emergency situation of increasing populations of grasshoppers which could have an adverse environmental and agricultural impact on the state. The legislature chose to restrict the applicability of the eradication program to those areas where the problem was most severe. The geographical distinctions of the grasshopper control law do not render the law unconstitutional by violating equal protection.

### IV.

■ The trial court found that respondent's claim that the grasshopper control law violates the Minnesota Environmental Policy Act involved disputed material issues of fact which preclude summary judgment. We disagree.

The Minnesota Environmental Policy Act provides that:

Where there is a potential for significant environmental effects resulting from any major governmental action, the action shall be preceded by a detailed environmental impact statement prepared by the responsible government unit.

Minn.Stat. § 116D.04, subd. 2a (1988). Respondent claims that because the grasshopper control program has a significant environmental effect on the honeybee population of the state, the Commissioner of Agriculture violated this statute by failing to prepare an environmental impact statement prior to ordering spraying.

Under chapter 116D, the Environmental Quality Board has the exclusive authority and responsibility to:

By rule establish categories of actions for which environmental impact statements and for which environmental assessment worksheets shall be prepared as well as categories of actions for which no environmental review is required under this section.

Minn.Stat. § 116D.04, subd. 2a (1988).

Pursuant to this authority, the Environmental Quality Board has promulgated de-

tailed rules governing environmental impact statements and environmental assessment worksheets. None of the categories which require environmental impact statements or environmental assessment worksheets even arguably include spraying for grasshoppers. Furthermore, the rules specifically exempt proposals and enactments of the legislature. Minn. Rules 4410.4600 subp. 26 (1989). The grasshopper control law is a proposal or enactment of the legislature. Therefore, under the Environmental Quality Board's rules neither an environmental impact statement nor an environmental assessment worksheet are required.

## DECISION

Under the grasshopper control law, appellants are authorized to certify the costs of spraying respondent's land for grasshoppers and enter those costs as a tax lien upon respondent's property. The grasshopper control law does not violate either the due process clause or the equal protection clause of the constitution. Furthermore, the Commissioner of Agriculture is not required to initiate environmental review under Minn.Stat. ch. 116D before ordering grasshopper spraying.

Reversed.