**Julius HOLTE, Glenn Holte, Wayne Buchholtz, A.R. Minch, and others similarly situated, and State of Minnesota, Appellants,**

v.

**STATE of Minnesota; Lyle Schultz, Clay County Agricultural Inspector; and Keene Township, Respondents.**

No. C2–90–1538.

Court of Appeals of Minnesota.

March 19, 1991.

Review Denied May 16, 1991.

 

Zenas Baer, Wefald & Baer, Hawley, for appellants.

Hubert H. Humphrey, III, Atty. Gen., John K. Lampe, Sp. Asst. Atty. Gen., St. Paul, for appellant State.

Larry K. Mickelberg, Clay County Atty., Moorhead, for respondent Lyle Schultz.

Wallace F. Gustafson, Willmar, for respondent Keene Tp.

Considered and decided by DAVIES, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

DAVIES, Judge.

Appellants argue that the Minnesota Grasshopper Control Act conflicts with the Minnesota Environmental Rights Act and that it unconstitutionally denies them due process of law. We disagree and affirm.

## FACTS

In July 1989, pursuant to a grasshopper eradication program under Minn.Stat. §§ 18.0223–.0227 (Supp.1989), the Minnesota Grasshopper Control Act (MGCA), appellant Wayne Buchholtz was ordered by Clay County Agricultural Inspector Lyle Schultz to spray his land. Under MGCA, if an owner who is ordered to spray land refuses to do so, the land is sprayed by the county, the cost is assessed against the land, and the owner refusing to spray may be charged with a misdemeanor. The person whose land was sprayed may subsequently challenge the order to spray at a post-spray hearing. Buchholtz "strenuously objected" to spraying his land because it would require spraying a local creek and trees planted by the Minnesota Department of Natural Resources, but he did spray.

Appellants Julius and Glenn Holte were similarly ordered to spray their land. The Holtes, however, obtained an ex parte temporary restraining order against spraying. The trial court denied the Holtes' subsequent motions for another restraining order and temporary injunctive relief. Further, the temporary restraining order was quashed. This order was appealed. It explicitly stated:

> The Holtes did not spray their land for grasshoppers, their land was not sprayed against their will by government agents, they have not paid nor have they been assessed any cost for the activities which did not take place. * * * [T]he Holtes will not be compelled to submit to spraying * * * [and] [t]he Clay County Attorney promises that there will be no criminal prosecution of the Holtes for their failure to comply with [the] notice.

Between the appeal and its later voluntary dismissal, the trial court denied the Holtes'

motion to have a special attorney general appointed to challenge the constitutionality of the act.

In January 1990 respondents Schultz, the state, and Keene Township moved for summary judgment against the Holtes' claims for damages and a permanent injunction. The Holtes made several counter-arguments, including that the act unconstitutionally deprived them of due process of law by requiring them (and others) to become misdemeanants before they could challenge the spray order in the post-spray hearing. The Holtes also argued that the act conflicted with the already existing Minnesota Environmental Rights Act (MERA). *See* Minn.Stat. § 116B (1988).

In March 1990 the trial court granted Buchholtz and A.R. Minch leave to intervene in the Holtes' suit. Minch claimed that, while he did not receive a spray order, his land was sprayed by an unknown person and that pursuant to the act the cost was assessed against his land. In April 1990 the state's motion for summary judgment was granted. Judgment was entered and appeal on several issues was taken in July 1990.

In August, this court issued *Omdahl v. Hadler*, 459 N.W.2d 355 (Minn.App.1990), which addressed issues relating to the Grasshopper Control Act. As a result of *Omdahl*, appellants have waived all issues on appeal except the act's alleged conflict with MERA and whether the misdemeanant provision of the act denies due process of law.

### ISSUES

1. Does the Minnesota Environmental Rights Act apply to the Minnesota Grasshopper Control Act?

2. Does the Minnesota Grasshopper Control Act unconstitutionally deprive appellants of due process of law?

### ANALYSIS

The supreme court has stated:

On appeal from a summary judgment it is the function of [an appellate court] only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Here the parties do not contest the relevant facts, only the trial court's legal conclusions.

### I.

▮ Alleging that the chemicals sprayed to kill grasshoppers will harm the environment, appellants argue the trial court erred in concluding that they did not have a civil cause of action under the Minnesota Environmental Rights Act. We disagree. The question of which act is to prevail over the other (or whether MERA is to be incorporated into the Grasshopper Control Act) is a question of legislative intent. One of the purposes for which MERA was established was

to create and maintain within the state conditions under which human beings and nature can exist in *productive harmony* in order that present and future generations may enjoy [the] * * * natural resources with which this state has been endowed.

Minn.Stat. § 116B.01 (1988) (emphasis added). Further, MERA states:

[I]t is in the public interest to provide an adequate civil remedy to protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction.

Minn.Stat. § 116B.01. *Omdahl*, 459 N.W.2d at 357, however, states:

In the spring of 1989, the State Department of Agriculture determined that the increased population [of grasshoppers] *posed a risk* to agricultural production and that there was likely to be an *emergency situation* requiring state action to eradicate the overpopulation of grasshoppers.

(Emphasis added.)

The legislature's prompt passage of a grasshopper eradication act to combat an "emergency situation" suggests immediate implementation of that program is required. We note that MERA does not contain the prompt hearing procedure which is

necessary in these circumstances. To permit MERA's "civil remedy" to intrude between the issuance of a spray order and its implementation, or after spraying took place, would not allow the swift action required to confront the grasshopper emergency successfully. Further, had the legislature wished to subject the Grasshopper Control Act to MERA it could have done so explicitly.[1] To the contrary, while neither MERA nor the Grasshopper Control Act specifically refers to the other, MERA contains an exception for activities ordered by the commissioner of agriculture, see Minn. Stat. § 116B.03, subd. 1 (1988), and it is the commissioner of agriculture who is required to implement the Grasshopper Control Act. See Minn.Stat. § 18.0225(a) (Supp.1989). Finally, we note that by statute:

> When the provisions of two or more laws passed at different sessions of the legislature are irreconcilable, the law latest in date of final enactment shall prevail.

Minn.Stat. § 645.26, subd. 4 (1988). We conclude the Grasshopper Control Act, the later enactment, is not subject to MERA.

## II.

Within grasshopper control zones the commissioner, landowners, and local weed inspectors [shall] have the same authorities and duties under chapter 18 for grasshoppers as if grasshoppers are noxious weeds under [the Noxious Weed Law] chapter 18.

Minn.Stat. § 18.0225(a) (Supp.1989). Under the Noxious Weed Law, see generally Minn.Stat. §§ 18.171–.315 (1988 & Supp. 1989),

> [a]ny person who violates * * * any duly adopted rule of the commissioner or who neglects, fails, or refuses to comply with any notice duly issued thereunder by the commissioner, or a local weed inspector, and duly served upon the person, or who fails, refuses, or neglects to perform any duty imposed by sections 18.181 to 18.-

271, shall be guilty of a misdemeanor; and, upon conviction, punished accordingly.

Minn.Stat. § 18.272 (1988) (emphasis added).

Omdahl v. Hadler, 459 N.W.2d 355, 361 (Minn.App.1990), found the Grasshopper Control Act satisfied due process requirements because of the availability of a postspray hearing to challenge spray orders under Minn.Stat. §§ 278 & 279. See Omdahl, 459 N.W.2d at 359–61. Here, appellants argue that:

> [I]n every situation where the post-deprivation remedy * * * is available an individual must first become a criminal [under Minn.Stat. § 18.272]. Accordingly * * * the post-deprivation remedy * * * can never be applied in a valid manner since only those who are willing to become misdemeanants have a right to such a hearing.

(Emphasis added.)

### A. Standing

■ Regarding facial challenges to the constitutionality of a statute, the U.S. Supreme Court has stated:

> [T]o prevail on a facial attack the plaintiff must demonstrate that the challenged law either "could never be applied in a valid manner" or that even though it may be validly applied to the plaintiff and others, it nevertheless is so broad that it "may inhibit the constitutionally protected speech of third parties."

New York State Club Ass'n v. City of New York, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting City Council v. Taxpayers for Vincent, 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984)). Here, as noted above, appellants allege that MGCA can never be applied constitutionally. Because they thus have standing we address the merits of their claims.

---

1. We note that the 1990 amendment to the Grasshopper Control Act states:
   > Counties and townships and their agents are *not* liable for damages from the grasshopper

control program for actions conducted in accordance with [this act].
Minn.Stat. § 18.0229, subd. 1 (1990) (emphasis added).

### B. Misdemeanor Penalty and Due Process

■ Earlier in this century, the Massachusetts legislature passed a statute allowing local boards of health to require smallpox vaccinations of all persons over 21 years of age and not under guardianship if, in the board's opinion, vaccination was necessary "for public health or safety." *See Jacobson v. Massachusetts,* 197 U.S. 11, 12, 25 S.Ct. 358, 358, 49 L.Ed. 643 (1905). We find various aspects of the smallpox statute analogous to the Grasshopper Control Act's delegation to local weed inspectors of the power to require spraying for grasshoppers. Jacobson, a resident of Cambridge, Massachusetts, was found guilty of refusing vaccination.

> [H]e was sentenced by the court to pay a fine of $5. And the court ordered that he stand committed until the fine was paid.

*Id.* at 14, 25 S.Ct. at 359. Upon conviction for refusing vaccination, Jacobson challenged the constitutionality of the Massachusetts statute on due process grounds. While there was no conviction in the instant case, the Grasshopper Control Act creates the possibility of criminal penalties for failure to comply with a weed inspector's directives without permitting a hearing to challenge the order.

In analyzing the smallpox statute, Justice Harlan, for the Court, observed:

> [T]he state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety.

*Id.* at 25, 25 S.Ct. at 361. Raising the spectre of a separation of powers problem, Justice Harlan continued:

Smallpox being prevalent and increasing at Cambridge, *the court would usurp the functions of another branch of government* if it adjudged, as a matter of law, that the mode adopted, under the sanction of the state, *to protect the people at large was arbitrary, and not justified by the necessities of the case.*

*Id.* at 28, 25 S.Ct. at 362 (emphasis added).

Further, *Jacobson* made clear that:

> [I]n every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to restraint, *to be enforced by reasonable regulations, as the safety of the general public may demand.*

*Id.* at 29, 25 S.Ct. at 362 (emphasis added).

■ The similar need for prompt action against the threat of smallpox in Massachusetts and grasshoppers in Minnesota is clear. Here, as in Massachusetts, the legislature has made its decision regarding what is necessary to protect the public interest. Indeed, unlike the Massachusetts statute, which did not contain a provision allowing affected persons to challenge vaccination, application of the Grasshopper Control Act may be challenged, albeit after the fact. In light of the U.S. Supreme Court's pronouncement of constitutionality for a statute which produced a judgment of conviction without a previolation hearing, we do not find the Grasshopper Control Act, which at least provides the protection of a post-spray hearing, to be unconstitutional.[2]

### DECISION

As we conclude that MGCA is not subject to the provisions of MERA and that appel-

---

2. Appellant also argues that the misdemeanant provision denies equal protection under Minn. Const. art. I, § 8:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

This particular claim was not explicitly made to the trial court. *See St. Paul Citizens for Human Rights v. City Council of St. Paul,* 289 N.W.2d 402, 407 (Minn.1979) (constitutional claim raised for the first time on appeal not addressed by supreme court). In any event, appellant's argument must fail. Under *Jacobson* the misdemeanant provision here does not violate due process. Thus, the "injury or wrong" a person may suffer under the Grasshopper Control Act is "conformable to the laws."

lants are not deprived of due process of law, we affirm the trial court's summary judgment order.

Affirmed.